## JAMES MORSE & BROTHER *v.* THE RUTLAND AND BURLINGTON RAILROAD COMPANY.

*Obligation of railroad companies to fence their road.   Negligence in the running of their trains.*

The rule in Jackson's case, 25 Vt. 150, in reference to the obligation of railroad companies to fence their road, considered and affirmed.

Whether, under all the circumstances of a particular case, a railroad company is guilty of negligence, in running its train at a certain speed, is a question for the jury.

TRESPASS ON THE CASE, to recover the value of two cows killed upon the defendant's railroad by one of their engines.    Plea, the general issue, and trial by jury, May Term, 1854,— PECK, J., presiding.

Upon the trial the following facts appeared.  About a mile south of the village of Burlington the defendant's railroad was crossed by a highway, at the intersection of which were cow gates, and about two hundred rods further south, the railroad was crossed by another highway.    Between these highways the railroad was fenced on its east, but was unfenced on its west side, adjoining which were two lots, the north one of which was owned by one Seymour, and the south one, which adjoined the highway, was owned by the defendants.    There was no fence between the defendant's lot and either

the highway on the south or Seymour's lot on the north, so that cattle had free access to the track of the railroad, across said lots, from the south highway. On the morning of the accident the plaintiffs' cows were in their barn yard at their residence, and during that day were several times seen in the highway between that place and the place of the accident, which was about two miles distant;—and it appeared that they crossed the railroad in the south highway, and entered upon the defendants' lot from said highway west of the railroad, and passed over the same on to the railroad track near the cow-gate south of the north highway, and were there killed by the engine of the defendants' evening passenger train from the south. The track, from near the south highway, descended toward the north at a grade of about thirty-five feet to the mile, and owing to a cut and curve in it, the cows could not be seen from the engine until it got about midway between the highways. The train was going at the rate of thirty miles an hour, which was its usual speed on this part of the road; and the defendants' testimony tended to show that, after the engine came in sight of the cows, it was impossible to check it so as to avoid killing them without endangering the safety of the train, and that due care was in fact exercised in the management of it; and there was testimony tending to show that the speed of the train could have been so regulated before reaching the point where the cows could be seen, as to have then checked it with safety, but with less convenience to the defendants' business. It did not appear that either of the plaintiffs knew that the cows had left their premises until after the accident.

The plaintiffs claimed, and requested the court to charge the jury, that the defendants were liable, inasmuch as the rail road was not fenced where the cows went upon its track, even if the engine and train were managed with proper care; and that, if this were otherwise, and the engine could not, after it came in sight of the cows, be checked so as to avoid killing them, and it was, after that time, managed with proper care, yet that it was the duty of the defendants to have so regulated the speed of their engine and train before reaching that point that they might have been controlled, in case cattle should be found there in consequence of there being no fences, and that there was a want of due care in their not having done so.

The court refused to charge the jury as requested; but, among other things, charged that the neglect of the defendants to fence their road opposite the lot of Seymour, and the defendants' lot over which the cows passed on to the railroad, did not constitute a cause of action against the defendants, even if the want of such fence was the cause of the cows passing on to the railroad track, and thereby being killed. That if the plaintiffs could recover, it must be upon the ground of negligence in the defendants, or a want of ordinary care and prudence in them or their agents, in the conduct and management of their train ; that if the jury found that the defendants, or their agents, were wanting in ordinary care and prudence, and that that caused or contributed to the injury, the defendants were liable; that this want of care and prudence might consist in the speed with which the train was running, previous to the time they came in sight of the cows, or at any time down to the time of the injury, or in the want of proper vigilance in discovering the cows in season to avoid the injury, or in the conduct and management of the train after the cows were discovered; that the fact that the train was going at the usual speed was not conclusive in favor of the defendants, that it was for the jury to say whether it was ordinary prudence to run at that speed at that place; that it was the duty of those having the control and management of the train to use ordinary care and prudence in observing objects upon the track in season to avoid injury or accident, and that whether the cows were on the track with or without the plaintiff's fault, it was the duty of those in charge of the train to use due care and prudence, and every practicable means to avoid injury to the cows after they came in sight of them, or discovered them upon the track. The court further told the jury that the degree of care and caution required was in proportion to the danger and exposure, and that in determining the question whether the defendants, or their agents, were guilty of negligence, or imprudence, or want of care, they should take into consideration the place — the formation of the road, the cut and curve in the railroad, and every other fact disclosed by the evidence tending to increase the danger or exposure to accident or injury at the place in question, so as to require greater care and caution at that place; and if the jury, upon the whole evidence in the case, should find that any want of ordinary care and prudence

on the part of the defendants, or their agents, caused or aided in producing the injury complained of, the plaintiffs were entitled to recover; otherwise the verdict should be for the defendants.

Under these instructions, the jury returned a verdict for the defendants. Exceptions by the plaintiffs.

*Peck & Harvey* for the plaintiffs.

I. The court erred in not ordering a verdict for the plaintiffs.

The case stands on the general R. R. fencing act. Comp. Stat. ch. 26, § 41. The construction of this was not involved in *Jackson* v. *same defendants*, 25 Vt. 150. That case professed to settle a provision in the charter relating to the rights of adjoining owners.

The general act is a police regulation for the protection of railroads as *highways*, to be enforced through the medium of claims for private damages. Such is the import of the language, taken literally; and as part of a general railroad law, the presumption is that it was intended to be a police regulation. Hence it does not distinguish between estrays, and beasts not estrays, if they are estrays without the knowledge or consent of their owners. *Fawcett* v. *York & North M. R. Co.*, 2 Eng. L. & Eq. 289.

II. The second request to charge should have been complied with. The defendants knew of the exposed condition of the road,— their evidence tended to show that after the train came in sight, it could not be checked so as to avoid the injury with safety to itself, but could have been before it came in sight.

The omission to check it before it came in sight, with a knowledge of the consequent risk, was an assumption of the hazard and an omission to guard against the consequent loss.

This was *per se* negligence.

*Phelps & Chittenden* for the defendants.

I. The obligations of the defendants to fence extends only to the owner or rightful occupier of adjoining fields, and against cattle *rightfully* in such fields. On this point the case is identical with that of *Jackson* v. *same defendants*, 25 Vt. 150, and that case is decisive of this. See also *Hurd* v. *same defendants*, 25 Vt. 121.

II. The correctness of the charge on the point of negligence in running the train cannot be questioned by the plaintiffs. If erro-

neous at all, it was in being more favorable to them than the facts warranted.

The opinion of the court was delivered by

BENNETT, J. We think the principal question raised in this case must be governed by the case of *Jackson* v. *Rutland & Burlington Railroad Company*, 25 Vt. 150. The charter of this company enacts, " that the corporation shall build and maintain a sufficient fence upon each side of their railroad, through the whole route thereof." In Jackson's case it was settled, that the duty imposed upon the corporation by their charter was not a *general* duty, but that the obligation to fence extends only to the adjoining owner, and to cattle lawfully upon his close. Jackson's case is in accordance with the English cases. See *Rickett* v. *East & West India Docks and Birmingham Junction Railway Company*, 12 Eng. Law & Eq. 520. The case of *Fawcett* v. *The York & North Medland Railway Company*, 2 Eng. Law & Eq. 289, when rightly understood, is not opposed by the case in the 12th. That case goes upon the ground that the duty to keep the gates closed, was a *general duty*, imposed upon the corporation at all times and under all circumstances, while in the case in the 12th of English Law and Equity, and in Jackson's case, the duty to build and maintain fences was held to be a *limited* duty.

It has been argued that the provision in the general railroad law of 1849, in relation to fences, and which, it does not appear from Jackson's case, was particularly brought to the notice of the court, should have led to a different result from the one arrived at in that case. But we apprehend not. The provision in the general railroad law is, " that each railroad corporation shall erect and maintain fences on the sides of their road, so far as the same shall be necessary, of the height and strength of a division fence, as required by law, and farm crossings of the road for the use of the proprietors of lands adjoining such road; and also construct and maintain cattle guards at all farm and road crossings, suitable and sufficient to prevent cattle and other animals from getting on to the railroad". If we were to regard this general railroad law as applicable to this company, and binding upon them, (which we do not find it necessary to decide,) we could not suppose that it was the

intention of the legislature to extend these duties beyond what they were extended by the terms of the charter; that is, not beyond the adjoining proprietor. The plaintiffs were then wrong doers in suffering their cows to stray upon the railroad track, and the case must be governed by Jackson's case.

We do not see that the plaintiffs can complain of the charge of the court, in relation to the question of negligence in the defendants, in running their engine. It is claimed by the plaintiffs' counsel to be *negligence per se* in the defendants, as matter of law, to run their engine so fast that it could not be checked after the cattle were discovered to be on the track, until the collision took place. But we think it was a question, under all the circumstances for the jury, and that it was properly submitted to them to say whether, as matter of fact, there was a want of the requisite care in the manner of running the engine, from its rate of speed, or in other respects.

Judgment of the county court affirmed.