Sneed, J.,
delivered tbe opinion of tbe court:
Tbe action is to recover damages for stock killed by defendant in running its train. Tbe verdict and judgment were for tbe plaintiff for tbe value of tbe stock. Upon tbe trial tbe deposition of defendant’s engineer was read to the jury. He testified that the accident occurred at night *677 when tbe train was running 23 to 25 miles per hour; that be discovered tbe cattle on tbe track about 35 to 45 yards before tbe train; that on such a night, it being a bright night, and at such a speed, tbe headlight would not discover an object further than that distance, but that going at the rate of 20 miles an hour the headlight would discover an object some 60 yards; that at the rate the train was running he could not have checked it so as to avoid the accident in the distance of 60 yards.
He states that the wind was blowing so bard that the water gathering in his eyes was another cause for his not being able to see further. He was on the lookout ahead, and when he saw the cattle be shut off the steam, whistled for brakes, reversed tbe engine, and whistled the cattle alarm. He states further that he felt the brakes' apjilied when the whistle blew, and that he did all in his povyer to prevent the accident.
After tbe deposition was read the plaintiff moved to exclude certain portions of it from the jury, which was done-. The questions and answers thus excluded were these:
. 1st. Hid you feel the brakes applied when you called for them? Ans. I did. Could an object, at that point be discovered at a further distance than 35 or 45 yards? .If not, why? Ans. It could not be, fo-r tbe reason a man looking out the window at that speed, the wind would make his eyes water so 1hat he could not see an object at a further distance. Besides, the headlight did not show at a, greater distance than that on a light night, going at that speed. Did you do all in your power to prevent the accident? Ans. I did. "Were you on the lookout ahead at that time? Ans. I was.
The statement of the engineer that he did all in his power to prevent the killing of the stock was properly excluded. Tire inquiry for the jury was, whether tbe accident was occasioned by the negligence of the defendant — -and the verdict of the jury must be shaped by the facts — -by what *678 the engineer did do rather than what in ids opinion was the effect of what he did. The jury are the judges whether what he did do was all he could do in the premises, and not the witness.
As to the other portions of the testimony excluded, we think the exclusion thereof was erroneous. The company was thus cut off from the most material matters of the defense in establishing the absence of negligence in its agents, the first and most important of which was that of keeping a lookout ahead for obstructions upon the track. This is the first requisition of the statute. The next is that when any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent the accident. If these things are done the company is by the law absolutely absolved from all liability. Code, secs. 1166, 1168. The burden of proving that these precautions were observed is upon the company. And the question for the jury was whether or not they were observed. Under the rulings of the court the defendant was prevented from proving what the statute requires it to prove as its complete protection.
The reason for His Honor’s ruling is not disclosed. We are left to infer that in the opinion of the court the defendant was guilty of such a degree of negligence in running at such a speed that the train could not be checked in time to prevent the accident, or that the want of headlight that would discover the obstruction further than it was discovered, was of itself such negligence as to render the statutory defenses no protection. We are aware of no law in this state which undertakes to regulate the speed at which a railway train shall be run upon its highway. The question of speed is left to the discretion of the company, to be regulated according to the exigencies of commerce or travel, under the liabilities imposed by law for a reckless abuse of this discretion. And in any case the question *679 whether under all the circumstances the company is guilty of negligence in running its train at a certain rate of speed is a question of fact for the jury. Moore v. R. & B. Railroad Co., 27 Verm., 49. And in several cases it has been held that in determining the rate of speed at .which a railroad company may rein its trains, it is not bound to consider the increased risk to cattle running at large, in the vicinity of its track. 13 Ohio St. Rep., 66; 46 Miss., 578. No doubt cases do often occur when a reckless speed would amount to gross negligence, but the - jury''would judge thereof with all the facts before them.
While we are aware of no law prescribing what character of headlight the railway company should use, or the power thereof in discovering obstructions on the track, yet we presume that the general principle which would govern that question would be that which is applicable in every other appointment of the locomotive, that it is the duty of the company to use the best the state of the art affords.
In the case before us it does not appear that the headlight was an inferior one, nor is there any proof to show that the cattle were not seen by the engineer at the very instant of time they came upon the track, some 35 or 45 yards before the train, when they were instantly discovered by the headlight, when he at once resorted to the precautions prescribed by law.
Beverse the judgment and award a new trial.