## C. M. HUGHES & CO. et al. v. ALBERT R. HALL.

Middle Section.     September 28, 1926.

Petition for Certiorari denied by Supreme Court, January 15, 1927.

1. **Negligence.** Although the violation of an ordinance may be negligence per se there still may be a case for the jury as to whether the negligence proximately contributed to the accident.

   In an action for damages for personal injuries where under the plaintiffs' version of the facts his violation of the ordinance did not contribute to the accident, held that it was a question for the jury.

2. **Negligence.** Plaintiff's violation of an ordinance must amount to common-law negligence to bar a recovery.

   The plaintiff's violation of an ordinance in and of itself, unless it amounts to common-law negligence, will not bar a recovery or constitute a defense to his cause of action, where the ordinance provides that the provisions of the ordinance shall not excuse the driver from constant vigilance to avoid injury to pedestrians.

3. **Evidence.** The fact that plaintiff was subject to delusions and hallucinations held not sufficient to exclude his testimony in regard to an accident.

   In an action to recover for personal injuries where the evidence showed that every since the accident plaintiff had been subject to delusions and

hallucinations but his evidence and the examination and cross-examination showed that he had a clear understanding of the facts surrounding the accident, held that the court properly refused to exclude his evidence.

4. **Trial. Actions of attorney held not sufficient to justify reversal of the case.**
    Where the record showed that the attorney for the plaintiff had been rebuked and reprimanded by the court of its own motion for his action in conducting the case, held that this was not sufficient to reverse the case.

Appeal in Error from Circuit Court, of Davidson County; Hon. E. F. Langford, Judge.
Affirmed.

McGugin, Evans and Cate, and W. F. Carpenter, of Nashville, for plaintiffs in error.

Atkinson and Atkinson, of Nashville, for defendant in error.

THOMPSON, J. On February 22, 1923, the plaintiff Albert R. Hall was struck and injured by a truck of the defendants which was being operated by one of their servants along Hermitage avenue in the City of Nashville. He has recovered a verdict and judgment for $10,000, and the defendants, their motion for a new trial having been overruled, have appealed in error to this court and have assigned error.

Hermitage avenue extends eastwardly and westwardly and is intersected by Academy street and Lime street, Academy street being about 750 feet west of Lime street. From Academy street to Lime street, Hermitage avenue is straight and slightly slopes down hill, Academy street being somewhat higher than Lime street. On the north side of Hermitage avenue there is a school for the blind, the grounds of which extend from Academy street to within a little more than 100 feet of Lime street. At the extreme eastern end of these grounds (about 105 feet west of Lime street) a driveway eleven feet wide leads onto the grounds from Hermitage avenue, and there is a small street light over Hermitage avenue about opposite the entrance of this driveway. There is one street car track along Hermitage avenue. The south rail of it is about eight and one-half feet from the south curb of Hermitage avenue, and the north rail is about eighteen feet from the north curb. Automobiles going east along Hermitage avenue upon meeting a street car going west generally pass to the north of the street car, as the space to the south of the street car is so narrow. The plaintiff, Hall, lived at the northeast corner of Lime street and Hermitage avenue. There was a regularly designated street car stop some little distance east of his home and Lime street, and there was another at Academy street.

The plaintiff's version of the accident was as follows:

He returned from his work to his home about 5:00 o'clock on the afternoon of February 22, 1923, bathed, shaved, dressed, ate his supper, and started from his home with the intention of going to town on a street car to meet a friend and attend a lodge meeting. It was then about 6:30 p. m. and dark. He walked west on the sidewalk on the north side of Hermitage avenue until he came to the driveway into the blind school grounds. At this time the street car he desired to get on was going west on Hermitage avenue, and he waved to the motorman to stop. He looked both ways on Hermitage avenue and saw no vehicles approaching. He then stepped onto the street and walked to the street car as it slowed down. The street car was a "one-man" car, the entrance being at the front. As the car slowed down its front end was a step or two ahead of him and he was walking along by the side of it (having taken two or three steps) until it could be brought to a full stop and he could get on. Just at this time defendant's truck (plaintiff himself did not then have time to see whether it was a passenger car or a truck) without any lights burning on it and traveling eastwardly at a fast rate of speed and without giving any warning of its approach, struck him before he could move or get out of its way and knocked him down. The next thing he knew was two weeks later when he regained consciousness at a hospital. The place where he attempted to get on the street car was not a regularly designated street car stop but it was customary for street cars to stop there to take on and let off passengers upon being signalled to do so. As stated, it had a street light over it.

The defendants' version of the accident was:

Its truck was traveling eastwardly along Hermitage avenue at a slow rate of speed and with its lights burning, and went necessarily onto the north side of Hermitage avenue when its driver saw the street car coming. It passed the street car which was going west. When the street car had gotten its length and a half behind the truck, and before the driver of the truck had time to turn it back to his right, he saw the plaintiff some distance in front of him run from the sidewalk on the north side of Hermitage avenue in a southwestwardly direction; that is, he ran diagonally into the street away from the north curb and toward the west as though he were running after the street car in an effort to overtake it. Plaintiff was looking back over his left shoulder and for this reason did not see the truck. The driver pulled the truck still farther to his left to avoid the plaintiff, blew his horn and finally hollowed at plaintiff. He also slowed down and stopped just as the front end of the truck and the plaintiff collided.

The plaintiff and the negro truck driver were the only eye witnesses to the accident, but each side introduced some evidence to corroborate the two above-stated versions.

In addition to common-law negligence the plaintiff relied upon three city ordinances: one limiting the speed of strucks, etc., to fifteen miles per hour; another requiring lights to be burning; and the third requiring a horn to be blown, etc. The defendants among other defenses relied upon an ordinance requiring pedestrians to look both ways before stepping onto a street, to cross streets at right angles and only at street intersections. However, this last-mentioned ordinance ended as follows: "This provision, however, shall not excuse the driver of any vehicle from constant vigilance to avoid injury to pedestrians under all conditions, or from his own carelessness."

The first assignment of error makes the question that there was no material evidence to support the verdict and that the trial court erred in not granting the defendants' motion for peremptory instructions. We do not think this assignment is well taken. Certainly under the plaintiff's version of the accident the driver of the truck was guilty of common-law negligence and also of violating the city ordinances, and to say the least of it, it was a question for the jury as to whether the plaintiff was himself guilty of negligence which proximately contributed to the accident. Insofar as the plaintiff's violation of the city ordinance is concerned, even assuming it to be negligence per se under his version of the accident, it was a question for the jury to determine whether it proximately contributed to the accident, because a reasonable mind might conclude that it did not. And it should be remembered that plaintiff testified that he looked both ways before stepping into the street, and that he walked at right angles from the curb to the street car, although he did take two or three steps westwardly by the side of it, and since he was not attempting to cross the street but was attempting to board a street car at a place where they customarily stopped, we do not think the ordinance under his version of the accident, which we must on appeal accept as true was in the way of a recovery in his favor. Moreover, under the decision of the Supreme Court in Hines v. Partridge, 144 Tenn., 236, 231 S. W., 16, the reasoning in which would seem to be as applicable to ordinances as to statutes, the plaintiff's violation of the ordinance in and of itself, and unless it amounted to common-law negligence, would not bar a recovery or constitute a defense to his cause of action. This, on account of the above-quoted provision of the ordinance. We are therefore of the opinion that the trial court was not in error in submitting the case to the jury, and the first assignment of error is overruled.

The second assignment of error raises a question as follows: When the plaintiff rested and closed his case in chief the defendants moved the court to exclude entirely from the jury all of the testimony of the plaintiff himself as a witness upon the ground that

he was of unsound mind, was suffering from delusions, and hallucinations and was therefore incompetent to testify. The court overruled this motion and it was not again renewed, but after the court had charged the jury the defendants offered three special requests, the substance of which was that the court was asked to tell the jury that if they believed that the plaintiff was suffering from delusions and hallucinations, etc., and believed things were true which were not true they might disregard his testimony, or at any rate should weigh it cautiously and carefully in order that they might not be misled by any honest statement of the plaintiff which he himself believed to be true but which might not in fact be true and might flow from some of his delusions and hallucinations. The court declined to charge the jury as thus requested.

The principal injury which plaintiff received in the accident was a fracture at the base of the brain. He was taken immediately to the City Hospital where he had to be strapped and held in bed. He stayed there about fourteen days and during this time he suffered from all sorts of delusions and hallucinations such as thinking that airplanes were throwing explosives on the hospital, that his watch was full of dynamite, etc. Then he was taken home but as he continued to suffer from the delusions and hallucinations and was dangerous to his wife and two children he was taken to a sanitarium where brain and nervous troubles were treated. He stayed there eight weeks and was again taken home and for about a year was not permitted to go out by himself. He continued to have spells during which he was violent and dangerous, but he worked some, although he generally lost his job on account of these violent spells. At the time of the trial he still believed some of his delusions to be true and he still at times was having delusions and violent spells, but between spells and so long as he could keep himself composed he was rational. The physicians testified that his condition is permanent and that he will always suffer from delusions and hallucinations and violent spells. But after reading and rereading his testimony we are thoroughly convinced (as we are sure the trial judge was, although he spoke of the plaintiff as a "bug" in overruling the defendants' motion for a new trial) that the plaintiff was not suffering from any delusions or hallucinations concerning the manner in which the accident happened. A most thorough examination and a rigid cross-examination did not involve him in contradictions or uncertainties as to how the accident happened, as it did concerning later facts about which he had delusions and hallucinations. Indeed his memory of all facts and happenings up to the time of his injury was clear and distinct, and we think the trial judge was not in error in declining to exclude his testimony and in refusing to charge the jury as requested by the de-

fendants. He charged the jury fully as to how they should weigh
the testimony of witnesses, and told them that they should consider
the intelligence, appearance and conduct on the witness stand and
means of knowing the facts, etc., of the witnesses. He then later
said to the jury: "In considering the testimony of the plaintiff
in this case, Mr. Hall, you will look to the general manner and de-
meanor of this witness while on the stand, you will look to all other
testimony that has been offered in the case that relates to Mr. Hall's
condition both mentally and physically and in any other way, and
apply just such rules to his testimony as you will apply to all our
other testimony as I have heretofore explained to you." We think
this was sufficient. The second assignment of error is therefore
overruled.

The third assignment of error raises the question that plaintiff's
attorney exhibited such passion, heat, excitement and anger to-
wards the defendants' negro truck driver while he was cross-ex-
amining him on the witness stand that a new trial should be granted.
We do not think that the record shows such misconduct upon the
part of plaintiff's attorney as would justify us in reversing the
case. In the first place, the attorneys for the defendants did not at
the time ask the court to enter a mistrial, and did not even enter
an objection. But the court of his own motion and at the time
severely reprimanded the attorney for the plaintiff, and we think
that if either party suffered from the incident at the hands of the
jury, it was the plaintiff. The third assignment is therefore over-
ruled.

The remaining assignments relate to the charge of the court with
respect to the plaintiff's contributory negligence. Some of them
challenge parts of the charge and other challenge the refusal of
the court to charge as requested by the defendants. These as-
signments are too lengthy to be dealt with separately. We have
examined them carefully and also the charge which the court
gave the jury. He repeatedly and in detail told the jury (and ap-
plied the same to the two versions of the accident) that if the
plaintiff was guilty of any negligence (whether common-law or by
violation of the city ordinance) that proximately contributed to
the accident he would not be entitled to recover, and we do not
see how a charge could have been fairer to the defendants. All
the way through the charge he put the burden of proving contribu-
tory negligence upon the defendants, but under the plaintiff's ver-
sion of the accident contributory negligence could not be inferred
and the charge was therefore in accordance with Railroad Co. v.
Herb, 134 Tenn., 397, 183 S. W., 1011; Burke v. Street Ry. Co., 102
Tenn., 409, 52 S. W., 170; Stewart v. Nashville, 96 Tenn., 50, 33 S. W.,
613; Bamberger v. Street Ry. Co., 95 Tenn., 18, 31 S. W., 163.

We do not think the amount awarded the plaintiff was excessive, and since in our opinion there were no reversible errors committed by the court below, its judgment will be affirmed with costs.

Faw, P. J., and Crownover, J., concur.