JOSEPH T. REDDING v. IRENE L. HATCHER et al.

Eastern Section.   March 19, 1932.

Petition for Certiorari denied by Supreme Court, June 5, 1932.

Frantz, McConnell & Seymour, of Knoxville, for plaintiffs in error.

Jennings & Wright, of Knoxville, for defendant in error.

PORTRUM, J.  Mrs. Irene Hatcher and her husband, W. Raymond Hatcher, sues Joseph T. Redding and Stewart Reed, jointly, for damages, growing out of an automobile collision of the cars driven by Mrs. Hatcher and Mr. Redding, at a point in the roadway opposite the parked car of Stewart Reed.  At the conclusion of the plaintiffs' evidence the suit was dismissed as to Reed upon per-

emptory instructions, and he need not be noticed further as a defendant. Mrs. Hatcher sues for personal injuries and damages to her automobile; Mr. Hatcher sues for the loss of his wife's services, and for medical expenses incurred by him. The jury returned a verdict in favor of Mrs. Hatcher for the sum of $1575, and a verdict in favor of Mr. Hatcher for the sum of $500, and from these verdicts the defendant has appealed. The two cases were heard together in the lower court and will be treated as one in this court.

At the conclusion of the evidence the defendant made a motion for peremptory instructions, and also assigned as error in his motion for a new trial that there is no evidence to support the verdict. The principal insistence is that Mrs. Hatcher was guilty of contributory negligence which bars her right of recovery. The facts supporting the plaintiffs' theory are as follows:

Mrs. Hatcher lives in Fountain City, a suburb of Knoxville, and is employed as a stenographer for the purchasing department of the Aluminum Company of America, at Alcoa, in Blount county. She owned an Oakland Sedan and used it in going to and from her work daily; on the morning of August 1, 1930, she left her home in her car between six-thirty and seven o'clock, and was due at her office ten or eleven miles away at seven-thirty, and in making the journey it was necessary that she pass through the City of Knoxville. She had been delayed in her start because her husband had the key to her car and she had to procure it. After she had passed over the river-bridge in the city, and had entered upon the Maryville Pike, a paved highway eighteen feet wide, she caught up with and followed a delivery truck, but made no attempt to pass it since it was traveling as fast as she cared to travel. She was following the truck at a safe distance; and after she had passed Rockford, a village, the truck appeared to slow up as if to stop, and it did stop opposite a house on the side of the road. At the time she states she was driving at a rate of about twenty-five miles per hour, and when the truck stopped on the roadway she attempted to pass it by driving to the left, over the white line, and when she did she saw an approaching car three hundred and eighty feet away, as the distance was later determined to be, but she did not hesitate, thinking she had sufficient time to go around the truck and onto her side of the road without danger to or from the approaching car. When she gained the left of the road, and the truck no longer obscured her vision, she saw Reed's parked car sitting about twenty feet in front of the parked truck, on the concrete and near the white line in the center of the road. She states that she had sufficient time to clear this parked car and regain the right side of the road and avoid a collision with Redding's approaching car. But in passing the truck she blew her horn and then dis-

covered a woman and child crossing the road from the left who had gained about the center of the road. This woman hearing the horn looked up and discovered the approaching car driven by Mrs. Hatcher, and became confused, grabbing the child by the hand and attempting to again cross the road to the left; Mrs. Hatcher then turned to the left and ran off the concrete in an attempt to avoid striking the woman and child, but the woman and child continued to run to the left and then Mrs. Hatcher turned her car to the right in an attempt to avoid striking them, and did avoid hitting the woman with the front of her car, but struck her with the rear of the car and knocked her off of the road. Mrs. Hatcher was able to bring her car to a stop upon the roadway between the parked Reed car and the truck, but the car was sitting over the white line, the front being to the right of the road and the rear to the left. She states that when she attempted to pass the truck she slowed her car to about ten or fifteen miles an hour and she put on the brakes when she saw the woman in front of her. Her skid marks show that she applied the brakes thirty-six feet from the place where she brought her car to a stop. During these maneuvers the Redding car was approaching at a rapid rate of speed, estimated from thirty-five to forty-five miles per hour, and the driver only applied the brakes when thirty-six feet away from the Hatcher car, which was obstructing the passage on the concrete. The Redding car collided with the Hatcher car with great force, striking it on the side to the rear of the left front wheel, and with sufficient force to mash in the left side of the car, and also to knock the driver, Mrs. Hatcher, from under the wheel and through a closed door onto the concrete roadway.

It is imperative that drivers of cars on the highways pass delivery trucks, especially when they slow up and stop on the concrete, and the law does not cast the duty upon the rear driver to anticipate that another car is parked on the concrete in front of the slowing truck. A prudent person does not park his car on the concrete up to the white line. So when she attempted to pass the parked truck, and saw another car approaching, traveling four hundred feet away, she had time to regain the right side of the road but for the parked Reed car and the woman and child. If she had sufficient time she was not guilty of negligence in attempting to pass the parked car. If unforeseen conditions prevented it, she is not chargeable for these conditions as a matter of law. Especially is this true when the conditions in themselves were not the sole cause of the accident. Had the defendant exercised ordinary care the accident would not have happened, notwithstanding these conditions.

He was traveling upon a straight road, in full view of the Reed car which was parked on half of the concrete and which he admits he saw, but he says he did not see the truck nor the woman and child in the roadway. His companion says he did not see the truck nor the woman and child in the roadway. A parked car on the concrete is an admonition of danger to cars traveling in all directions, and when the defendant saw this parked car he should have become alert and looked for approaching cars, in fact all that would have been necessary would have been for him to give his attention to the road where the three cars and the woman and child were in his line of vision. He did not discover the Hatcher car until he was thirty-six feet away, when he applied his brakes; but his brakes were defective and did not adequately hold and as a consequence he ran into the Hatcher car with great force. We think there is evidence to support the conclusion that the plaintiff was not guilty of negligence, or if she were, that her negligence was not the prime and proximate cause of the injury. The assignments upon the facts are overruled.

The second assignment of error is:

"The court erred in overruling the motion of the defendant to declare mistrials in the case on his behalf after the attorney for the plaintiff had interrupted the cross-examination of the plaintiff's witness . . . and asked the witness in the presence of the jury if the statement was written by 'some lawyer for the defendant or some lawyer for the insurance,' insurance being mentioned in the presence of the jury for the purpose of prejudicing the jury."

An objection was entered to this statement of counsel; after a conference the court called in and instructed the jury as follows:

"The court finds that the remark upon which the motions for mistrials in these respective cases was predicated was not premeditated or intentional and that it was impulsive regrettable and inopportune, and furthermore the court is authorized by counsel for all parties to state to the jury that none of the parties to this litigation carry insurance, and the motion for mistrials in the respective cases are overruled."

It is conceded that counsel agreed that the court should state to the jury that none of the parties carried insurance, but the agreement was conditioned on the right of the defendant to rely upon the error, if it were an error, to overrule the motion for a mistrial. It seems to us that the defendant waived his right to rely upon his motion for a mistrial when he agreed to the statement made by the court. The purpose of requiring a motion for a mistrial is to end the litigation then and there and save the expense to the State and the parties. The public is interested in this matter, and a party

hasn't the right to experiment with the verdict of the jury, and when unsuccessful to set up a matter which he should have advanced earlier in the suit. It is intimated that the jury did not believe the judge when he said none of the parties had insurance, and it is obvious the defendant was denied a fair trial for this reason. We cannot assume that such were the facts.

It is said the court erred in charging the jury as follows:

"Be it further enacted, that it shall be unlawful for any person to drive any vehicle upon the highway carelessly and heedlessly in wilful or wanton disregard of the right or safety of others, and without due caution and circumspection, at a speed and in the manner so as to endanger or be likely to endanger any person or property.

"Be it further enacted that (a) every motor vehicle when operated upon a highway shall be equipped with a horn in good working order capable of emitting sounds audible under normal conditions for a distance of not less than two hundred feet, . . ."

And the trial judge should have charged the jury that the Acts from which the quotation was taken, being chapter 87 of the Public Acts of 1929, has been declared unconstitutional by the Supreme Court, and there was no statutory action. At the time of the trial this Act was thought to be constitutional by both the plaintiff and the defendant, at least the defendant raised no question of its constitutionality, but relied upon its provision as a defense. The judge charged the jury in reference to this statutory defense. These quoted provisions were set out in one count of the declaration, as well as in the judge's charge; in the motion for a new trial no error was assigned to the action of the court in giving these provisions in charge. After the motion for a new trial had been overruled, and an appeal perfected to this court, the Supreme Court in a published opinion declared this Act unconstitutional. By this assignment of error this constitutional question is raised in this case for the first time. Counsel call attention to this, but say that a constitutional question can be raised in any court at any time. In support of this position the case of Mattei v. Clark Hardware Co., 3 Tenn. App., 379 (Mattei v. Clark Hardware Co., 155 Tenn., 184, 290 S. W., 977), and Powers v. McKinzie, 90 Tenn., 167, 16 S. W., 559, are cited. The Appeals Report case is in point, and it is supported by the Powers case, but the Powers case was handed down in 1890 and at a time when the practice of the appellate court had not been clearly defined. Later the Supreme Court announced dissatisfaction with the unsettled practice and declared the purpose to harmonize the practice. Road Commissioners v. Railroad, 123 Tenn., 257, 130 S. W., 768. The rule is reaffirmed in Board of Edu-

cation v. N., C. & St. L. Ry., 148 Tenn., 679, 257 S. W., 91, in the following language:

"... The jurisdiction of this court is exclusively appellate, and that it can only review matters which the record shows have been considered and adjudged by the trial court. The errors thus reviewed and corrected, the court says, fall within two classes: First, errors which appear upon the face of the record proper, and, second, errors committed by the trial court in acting upon the motion for a new trial.

"Under the first head fall erroneous rulings of the trial court in sustaining or overruling motions and demurrers which challenge the sufficiency of pleadings and process; and under the second, errors committed in overruling or allowing motions for a new trial."

This rule and its enforcement was again the subject of a published opinion as late as 1929, in the case of Coleman Co. v. Isdell, 159 Tenn., 459, 19 S. W. (2d) 243.

The reason for this rule has been repeatedly discussed in the reported cases, and these cases cannot be reconciled with the Mattei v. Clark Hardware Co. case, supra, unless the latter case be treated as an exception to the rule. The Supreme Court has only impliedly approved this exception to the rule, for it did not discuss it in its opinion disposing of the case upon the merits. However, it did consider the assignments made for the first time in the appellate court.

If a cause of action is based upon a statute, and a judgment rendered on the statutory cause of action, and later the statute is declared unconstitutional, perhaps the judgment is void upon the record, and can be attacked as a void judgment by motion or otherwise.

Let us assume the exception to this rule of practice is established, then the defendant in error says the assignment of error should be overruled for two reasons, first, that the enactment was but a declaration of the common law, and second, that there were two counts in the declaration, one at common law and the other a statutory count, and if the judgment can be sustained on one count there will not be a reversal for error appearing in the other. We think these contentions are sound. Certainly if a person drives upon the highway "carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, and without due caution and circumspection at a speed and in a manner so as to endanger or be likely to endanger any person or property" he is guilty of common-law negligence if he does injure the person of another or his property. The charge in reference to the equipment of a horn has no bearing upon the issues involved. But if we are mistaken in this

it does not affirmatively appear that the error committed under the second count affected the verdict which could be assigned to the first count. Tennessee Central Ry. Co. v. Umenstetter, Admr., 155 Tenn., 235, 291 S. W. 452.

The exclusion of the following evidence of a witness who had had a conversation with Mr. Hatcher is assigned as error:

"Mr. Hatcher said that he just had a feeling that she was going to drive fast for the reason that he had the key, and that he said to himself just after he left the house and until she started to work, and after he returned to work,—he stated that he felt she was late for work and that she was going to drive unusually fast."

"Q. What else was said? A. He felt like she might have an accident and he stated that he was going to take her to work that morning,—he told her that he was going to take her to work that morning since she was late.

"Q. All right, go ahead. A. And she said no, that she would not have an accident and that she would not let him take her to work and that she went on by herself.

"Q. What else, if anything was said? A. Right at that time?

"Q. Yes. A. Oh, he said that he knew that she would drive pretty fast.

"The Court: I hold that the last was competent and I exclude the other."

The excluded evidence cannot be used as evidence of the wife's negligence; its only bearing would be a declaration against interest on the part of the husband, who was suing in his own right. But no issue is made upon the husband's contributory negligence which would defeat his claim. Therefore the testimony is not pertinent.

We have several assignments of error directed at the failure of the trial court to give special requests in charge to the jury. The first of these, which in our judgment comes nearest to be a correct statement of the principle, assumes that the roadway at the place of the passing was not clearly visible for a sufficient distance ahead, when the plaintiff testified the roadway was visible and she saw the oncoming car, and there were no facts to make an issue upon her statement. Each of the other requests are subject to some criticism because not sufficiently full or precise and should not have been given. We do not think the defendant was injured because of the defects in his requests for the trial judge's charge seems to us to be a fair one, and fully protected his rights.

There is an assignment of error that the judgments are excessive. The extent of the injury is not discussed, but it is said the plaintiff's remote contributory negligence justifies a remittitur. We have here-

tofore stated that there is evidence upon which the jury could base the verdict that the plaintiff was not guilty of contributory negligence, if this be the basis of the verdict we are not justified in reducing the recovery because of the remote contributory negligence of the plaintiff.

The judgment of the lower court is affirmed with costs.

Snodgrass and Thompson, JJ., concur.