# YELLOW BUS LINE, Inc. v. BRENNER.—213 S. W. (2d) 626.

Western Section. March 12, 1948.

Petition for Certiorari denied by Supreme Court, July 17 1948.

210

212

Canale, Glankler, Loch & Little, of Memphis, for plaintiff in error.

Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, for defendant in error.

SWEPSTON, J. This is an appeal in the nature of a writ of error from the verdict of the jury and judgment for plaintiff for personal injuries in the amount of $25,000 and for property damage in the amount of $600 arising out of a collision between a public carrier's bus and the automobile of plaintiff.

The parties will be referred to as in the trial Court.

On motion for a new trial the court suggested a remittitur of $8,500 on the basis of excessiveness because of passion, prejudice, or unaccountable caprice. Plaintiff accepted same under protest and has appealed for the purpose of restoration of the verdict of the jury. Property damage is not here involved.

## Defendant's Assignments of Error.

I. The Court erred in refusing to grant defendant's motion made at the close of all of the proof to direct a verdict for defendant, because (a) there was no evidence of actionable negligence of defendant, and (b) the undisputed evidence showed the plaintiff was guilty of proximate contributory negligence. "Under established rules of procedure regulating the review of jury trials of issues of legal cognizance, this question must be determined upon a consideration of the evidence viewed in the light most favorable to the prevailing party, disregarding all that is repugnant to that view." Davis v. Mitchell, 27 Tenn. App. 182, 178 S. W. (2d) 889, 895.

Irrespective of the exact view the jury took of the details of the entire evidence, there was evidence to show the following:

The collision occurred on a clear, dry day at 6:00 p. m., on August 6, 1945 during ample daylight.

The two roads form a T at their junction. White Station road runs straight North and South and from a point some 700 feet north of the junction it slopes gradually down grade to the junction and then even more gradually upgrade to the south.

Walnut Grove Road comes into it straight from the west at a right angle but does not cross it. Both are

paved with "blacktop" twenty-four feet wide on White Station Road and twenty feet on the other.

On Walnut Grove a few yards before you reach the west line of the other road is a "Slow" sign on the south side and a like sign straight ahead in the imaginary center of Walnut Grove Road but on the east side of the other road.

Plaintiff testified that as he came from the west on Walnut Grove, intending to turn north or left into the other road, he came to a full stop nearly to the west line of the other road. That he looked but could not see up to the left because of shrubbery in the northwest corner between the two roads. That as he entered the intersection in low gear where he could see, he saw the bus to his left about half way up the slope, or as he estimated it from 200 feet to half way up the hill to his left. That he could not tell how fast it was traveling, but he thought he had ample time to make the turn. That he drove from the right side of Walnut Grove Road into the intersection and made as near a right angle or square turn to the left as the length of his automobile, which was eighteen feet long, would permit. That he had been in no hurry and was not then driving fast in making the turn. That when he had almost completed the turn to the north, the bus collided with his automobile, striking it just aft the front bumper and against the door on the left side. That the bus must not have slowed down from the time he first saw it and the blow was such as to knock his companion, Mrs. Crawford, who was sitting to his right, to the floor and him to the right where she had been sitting. That although he was thus in the intersection first, the bus did not sound its horn nor yield the right of way to him.

He admits he did not sound his horn at any time.

There is evidence as to the position of the two vehicles after they came to rest placing both in the proximate center of White Station Road with room for other vehicles to pass on either side and with the front of the bus between the center line and north line of Walnut Grove in front or east of the "flared apron" or pavement covering the inner northwest corner of Walnut Grove. The front of the bus was resting against the left forward side of the automobile. That the bus was headed south with a slight turn to the southwest and the automobile was headed at a 45° angle northeast.

There was evidence that the bus had shoved the automobile back towards the south but not as much as twenty feet. R. 197. That there were skid marks of the automobile on the east side of White Station Road. R. 107.

Nobody knew the rate of speed of the bus. The driver testified that it had a governor which limited the speed to 40 miles per hour but he did not know the speed as it came down grade; he approximated it at thirty miles per hour as he approached the intersection.

The personal injuries will be referred to later. The left front fender and hood panel were mashed, the door, door post axle and radiator grill had to be replaced and the engine of the automobile was knocked loose and the frame was bent.

██ Hence, despite the argument to the contrary, we think the jury could have found from the foregoing one or more of the following acts of negligence as charged in the declaration:

1. Excessive speed under the circumstances and not keeping the bus under control;

2. Failure of the bus driver to give warning of his approach or intention not to yield the right of way to a vehicle already in the intersection;

3. That he was not keeping a proper lookout;

4. That he failed to use ordinary care to avoid the collision when he knew or by the exercise of ordinary care should have known that a collision was imminent.

The same evidence warranted the jury in absolving the driver of the automobile of proximate contributory negligence.

■ A substantial part of defendant's argument goes to the weight of the evidence, which we are not permitted to consider. He further argues, however, that the physical facts contradict plaintiff's testimony on two points.

That is, (1) that the undisputed evidence as to the position of the vehicles after the collision show that he did not pass to the right of the center of the intersection and (2) that the photographs show conclusively that he could have seen up the road to the left when he stopped before entering the intersection.

■ As to the first proposition, the exact position of the vehicles was not undisputed, but even so it was for the jury to say on conflicting evidence how they arrived at such a position, the position being only one piece of evidence.

The jury might have found either that the automobile did not pass wholly to the right of the center, or that it did as nearly so as was practical, or that the failure to do either did not proximately cause or contribute to the accident.

The over-all length of the automobile was eighteen feet, the distance from the left rear wheel to the right front wheel was somewhat less, but if this diagonal, or radius was more than twelve feet, or one half the width of White

Station Road, then it would have been a matter of extreme difficulty, if not impossibility, to turn left from the ten foot half of Walnut Grove into the twelve foot half of the other road, unless either the right rear wheel passed to left of center or the front wheel ran beyond the payment.

In Holt v. Walsh, 180 Tenn. 307, 174 S. W. (2d) 657, it was held, to be for the jury to say whether the law was violated in this regard, unless the evidence of violation be undisputed. That though undisputed, it is still for the jury to say whether the negligence was proximate or remote. Further that the ''center point'' of the intersection in laws of this sort should not be invariably contrued as a geometrical proposition, but within reason.

As to the second proposition, even if plaintiff could have seen up the road to his left when he came to a stop, the bus might have been over the brow of the hill about 700 feet away and not visible. He testified that it was about half way down the slope when he did see it after he had stopped, looked and started slowly into the intersection.

It is of no consequence whether he saw it sooner, if when he did first see it there was ample time for him to execute his left turn and for the bus to see him in the intersection and avoid the collision.

It was for the jury to say whether the plaintiff entered the intersection prudently and whether the bus should have yielded the right of way to one already in the intersection, or if they arrived there at the same time, whether the bus exercised due care in an effort to yield to the vehicle on the right.

Code Section 2687 and cases cited therein.

We do not, therefore, see the supposed application of the physical facts rule, as discussed in Klein v. Illinois Cent. R. Co., 4 Tenn. App. 563; Nashville, C. & St. L. Ry.

v. Perry, 13 Tenn. App. 268; Waller v. Morgan, 23 Tenn. App. 355, 133 S. W. (2d) 614.

Assignments II and III will be considered later.

Assignment IV complains of the Court on the method of impeachment of a witness by proof of prior contradictory statements.

The only witness to whom this could have had application was the bus driver of defendant. He was interrogated by plaintiff's counsel as to whether he had made certain statements, which were read to him when he appeared in the General Sessions Court regarding this accident. He replied that he did not know or did not remember.

If counsel had then adduced evidence that the witness had made such statements, the charge would have been appropriate and proper and he would have been within the rule as set out in the cases cited in his brief. Janeway v. State, 38 Tenn. 130; Cole v. State, 65 Tenn. 239.

■ The basic of the rule is simply that the party will not be deprived of the right to introduce such evidence merely because the witness does not remember having made the statements.

But no such proof adduced by plaintiff.

■ Therefore, it was error to give the matter in charge as a legal abstraction or assumption. The determinative inquiry, however, is whether it affimatively appears to have been prejudical.

Williams' Code Section 10654.

An examination of this witness' testimony will readily disclose the fact that on direct examination he answered practically all questions either positively or negatively and with reasonable intelligence, whereas on cross-examination he resorted for whatever reason to the well known formula of "I don't know" and "I don't remem-

ber" repeatedly about the vital details of the accident. Although he had been employed as a bus driver for several years, he said he had no idea how quickly he could stop, going 30 miles per hour. He did not remember whether the bus shoved the automobile back south, or how far north of the intersection he attained a speed of 30 miles per hour, or whether he changed speed, or whether the bus was shoved back north, or whether he testified to certain things in the General Sessions Court, and so on.

It is apparent from the record that he undoubtedly made a very poor impression on the jury, independently of whatever the jury may have deduced from the charge of the Court as to the point made in this assignment.

We are satisfied that no prejudice resulted and overrule the assignment.

Assignment V complains of the charge of the Court as to the measure of damages, as expressed in the part of charge reading as follows: ". . . and an amount that would fairly compensate him for the loss of earnings, the compensation that he would lose by reason of his injuries incapacitating him from following his usual vocation, . . ."

The criticism is that there was no evidence that he lost any earnings.

The general rule of ascertainment is stated in 25 C. J. S. Damages, Sec. 86, p. 617, under the heading "Loss of Time and Earnings", as follows: "Compensation for the loss of time resulting from a personal injury is to be measured by the amount of money which the injured man might reasonably have earned in the same time by the pursuit of his ordinary occupation, which may be ascertained from a consideration of the wages actually lost by him or by his average earnings, or from a consideration of his general qualities and his qualifications for any particular

business in which he may be engaged . . . ''. Also 15 Am. Juris. 500, Section 90.

In Railroad Co. v. Porter, 117 Tenn. 13, 94 S. W. 666, a railway mail clerk lost five months on account of injury. He was allowed to prove the loss by stating the amount of his salary before the injury.

In Davis-Mize Co., Inc., v. Waller, 13 Tenn. App. 246, the value of plaintiff's lost time was proved by showing that he and his brother had built up a successful business, that plaintiff was the leading director of it, that they drew no salary but put the profits back into the business; then on the basis of these facts witnesses were allowed to state the value of his time lost.

In Talley v. Dalton, 10 Tenn. App. 597, notwithstanding the absence of direct evidence of money lost or other actual valuation of earning capacity, the verdict was upheld on evidence of the injury, age and previous health, the extent of the injury and its effects.

In the instant case, there is shown injury, age, health, business activity as owner and operator of a wholesale liquor and a wholesale grocery business, the fact of absence and its general effect, and the amount of salary normally paid himself.

Hence, this assignment must be overruled.

Assignment VI complains of the refusal of the Court to permit defendant to question plaintiff as to whether he continued to draw his salary of $1,000 per month, or as to whether the busines of which he was owner and operator suffered any loss or made a profit during his disability and absence.

The excluded evidence has not been preserved in the record and we cannot, therefore, know what the answers would have disclosed, even if such evidence be competent and relevant. Holliston Mills of Tennessee v.

McGuffin, 177 Tenn. 1, 145 S. W. (2d) 1, 146 S. W. (2d) 357; Patton v. Hardison, 20 Tenn. App. 585, 101 S. W. (2d) 698.

█ Plaintiff testified that he drew this amount of salary before his injury, that he did not employ anybody to take his place during his disability and absence of eight months, off and on, and that the business ran itself the best it could during his absence. Yet, we should hardly be warranted in assuming from these facts that he drew the same, or any amount of salary during that period under conditions different from normal, or that his business did not suffer much or little or at all.

This assignment is overruled.

█ Assignment VII complains of the refusal of the Court to permit plaintiff to be asked about suits pending against him by others involved in this accident.

Since the excluded evidence is not preserved of record, we cannot consider this assignment.

Assignment VIII complains of the action of the Court in sustaining an objection to a question and affirmative answer that northwest corner of this intersection was paved so as to permit one to "cut the corner" or make a sharp left turn, which was a part of defendant's theory, as to what plaintiff did.

█ There was no dispute that plaintiff could have cut that corner. The photographs showed clearly that it could have been done. The exclusion of the testimony was, therefore, immaterial and harmless. Bower v. Lunney, 27 Tenn. App. 87, 178 S. W. (2d) 91.

The dispute was whether he did cut the corner.

This assignment is overruled.

Assignment IX complains of the refusal of the Court to permit defendant's bus driver to testify whether he did all he could to prevent the accident.

 No exception was made at the time to the action of the Court. Hence, it was waived. Exception to the admission or rejection of evidence must be taken at the time and preservd by motion for new trial. Burem v. Harville, 26 Tenn. App. 595, 604, 174 S. W. (2d) 663, and cases cited therein.

 However, it is well settled that where the witness has already described what he did, the admission or the exclusion of his statement of opinion that he did all he could is harmless. Fitch v. Louisville & Nashville Railroad, 3 Shan. Cas. 676; Kennedy v. Southern Railway Co., 2 Higgins 103, 2 Tenn. Civ. App. 103; Yellow Cab Co. v. Gattuso, 11 Tenn. App. 109, 113; 66 A. L. R. 117.

Assignment overruled.

Assignment X complains that the Court allowed plaintiff's counsel on redirect examination to cause plaintiff to change his testimony as to the location of skid marks.

The proper reading of his first testimony on this point shows that he placed the skid marks of his car on the east side of White Station Road. R. 107; on cross-examination he placed them on the west side. R. 112. Then his counsel re-examined him, R. 118; 120 for the purpose of clearing up the confusion of the witness.

 That is one of the legitimate purposes of redirect examination, and it rests largely in the discretion of the trial judge. Cherokee Packet Co. v. Hilson, 95 Tenn. 1, 31 S. W. 737; 5 Jones on Evidence 297, Sec. 871.

Further complaint is made under this assignment that the Court permitted counsel for plaintiff to state in the presence of the jury that defendant's counsel "in his desperation, knowing he had a losing case, because he is desperate—should argue to the jury". Defendant further says in the brief that the Court refused his request that remark be striken.

224

■ Respective counsel had already engaged in considerable snipping at one another. The above remark was of no, more moment than others theretofore made and could not have any serious implications to the jury. It was improper in a strict sense, but harmless. Pruitt v. Williams, 21 Tenn. App. 171, 106 S. W. (2d) 892.

■ In any event the court did tell the jury to disregard it. This was the only acton requested of the Court. Even if the remark had been of more consequence, where the Court has ruled it out, there will be no reversible error in the absence of a motion for a mistrial and a refusal to grant same. Hughes & Co. v. Hall, 4 Tenn. App. 608; Herstein v. Kemker, 19 Tenn. App. 681, 94 S. W. (2d) 76.

This assignment is overruled.

Assignments XI and XII complain of the refusal of the following special requests:

"You are further instructed, gentlemen of the jury, that the statutes of the State of Tennessee relative to the right-of-way of motorists at intersections do not cover the whole duty of motorists at such intersections. In addition to the requirements of these statutes, a motorist is under the duty of exercising ordinary car to avoid a collision with another using the intersection and even if such motorist has the right-of-way, he is guilty of negligence if he continues to cross the intersection after seeing that another motorist is not going to allow him the right-of-way."

"You are further instructed, gentlemen of the jury, that in determining which of the parties to this suit, if either of them was guilty of negligence, the question of which of them had the right-of-way is not necessarily relative. The mere fact that one vehicle has the right-of-way over another at a street or highway intersection does

not relieve the driver of the vehicle having the right-of-way from exercising due to avoid a collision."

■ The first one is not accurate. It fails to distinguish between the situation where the motorist has already entered an intersection and where he is about to enter.

In either situation he is required to use ordinary care under the circumstances to avoid injuring another on the highway. But if a motorist has already entered the intersection before he discovers, or by the exercise of ordinary care should discover, that another is not going to yield the right of way, ordinary care may dictate either that he stop or continue on, or whatever conduct may amount to the exercise of ordinary care to avoid a collision. Hence, the instruction which makes him guilty of negligence as a matter of law, as this one does, if under these circumstances he continues to cross the intersection, is incorrect.

On the other hand if he is about to enter the intersection, when he sees, or should see, that the other party is not going to yield the right of way, ordinary care may dictate that he either not enter at all, or that he may enter, having due care to avoid a collision.

This is the sense of the two cases from which defendant quotes in his brief. Maxwell v. Kirkpatrick, 22 Tenn. App. 21, esp. page 29, 116 S. W. (2d) 340 and Duling v. Burnett, 22 Tenn. App. 522, 534, 124, S. W. (2d) 294.

■ The other request is not accurate, even if the word "relative" is given its intended meaning "relevant". The question of right of way is necessarily relevant both under the common law and under the statutes; it may not be necesarily determinative or controlling.

It was not error to refuse both of these requests because both the points were ably and fully covered by the general charge and they were not correct in substance.

Hence, both assignments are overruled.

Assignment XIII complains of the refusal of the following special request: "The Court charges you, gentlemen of jury, that in arriving at your verdict, you are entitled to and should give consideration to what is known as the physical facts surrounding any incident that you are considering, that is those physical facts shown by the testimony of the witnesses, such physical facts are witnesses that should be conidered by you in arriving at your verdict."

 This instruction is not strictly accurate. Physical facts are not witnesses, but are evidence along with the testimony of witnesses, all documentary evidence, surroundings, situation, etc. Tenn. Proced. Sec. 1300.

This instruction singles out a part of the evidence and thereby tends unduly to emphasize it. It does not specify by name the particular physical facts as in Louisville & N. R. Co. v. Elvins, 13 Tenn. App. 57, but it does point only to this type of evidence, which is equally improper. Gulf Compress Co. v. Insurance Co. of Pennsylvannia, 129 Tenn. 586, 167 S. W. 859; Union Bus Terminal v. Mennen, 14 Tenn. App. 551.

It was properly refused and this assignment is overruled.

Defendant's Assignments II and III and plaintiff's two Assignments will be discussed somewhat together.

Defendant's Assignment II complains of the refusal of the Court to grant a new trial for excessiveness of the verdict for the alleged reasons that (1) the injuries proved did not justify the verdict and (2) the undisputed proof showed negligence so gross that, even if only remote and

not proximate, the damages should be only nominal. His Assignment III complains of the refusal to grant a new trial because the verdict was so excessive as to indicate passion, prejudice or unaccountable caprice for the two reasons alleged under Assignment II and for a third reason that, since the Court did in truth find the verdict so grossly excessive as that he suggested a remittitur of $8,500, he should have granted instead a new trial.

Plaintiff's Assignments go to the action of the Court in suggesting the remittitur.

 Referring to defendant's third reason under Assignment III, the refusal of the Court to grant a new trial clearly was not for the stated reason erroneous.

The procedure both before and after the statute, Code Sec. 8987 is well described in Southern Ry. Co. v. Black Diamond Collieries, Inc., 9 Tenn. App. 225, 241.

Since the statute, briefly, the procedure is that in neither event, whether the verdict be merely excessive or so excessive as to indicate passion, prejudice or unaccountable caprice, may the Court force the plaintiff to accept a remittitur.

If the verdict be merely excessive, the alternative of plaintiff's refusal to accept a remittitur is as of right a new trial. If he does accept a remittitur, the verdict is cured and he has no right of appeal in this respect.

If it be so excessive as to indicate passion or other improper motives, the alternative of plaintiff's refusal to accept a remittitur is as above, a right to a new trial; but here the Statute, Code Section 8987, gives plaintiff the right to accept under protest and take an appeal; and if the reviewing Court find the verdict to be not thus so excessive, it shall restore the verdict to the amount as found by the jury.

Referring back to defendant's first reason under both Assignments II and III that the evidence of injury does not justify the verdict rendered by the jury, we take it to mean the verdict as entered after the remittitur was accepted, because the trial Court agreed with defendant to the extent of $8,500.

The undisputed evidence showed that plaintiff suffered a fractured shoulder which had to be put in a cast, elevated and immobilized for about five weeks, during which time he had to remain in the hospital, and required several weeks treatment thereafter, all of which caused considerable pain. That about two years after the injury, the arm was still functionally impaired twenty-five perent.

Further, shortly after he left the hospital, his back began to pain him severely. This was diagnosed and treated as a ruptured disc, which is a cartilaginous structure somewhat like a washer between successive vertebrae and serves as a shock absorber.

Three eminent doctors testified that this sort of injury is traumatic in orgin; that when a disc is fractured, a part of it may press against the nerve roots that comes out of the spine, which causes intense pain; that although the injury was not felt in this case until after the lapse of several weeks, that it could have been caused by the collision but not felt while plaintiff was in bed for treatment of his arm; that the treatment for such injury is rest in bed on one's back, which tends to prevent the ruptured disc from slipping against the nerve roots.

There was no evidence of other existing back trouble or of other accident which could have caused this injury.

Plaintiff was in the hospital on this account for over five months intermittently, went to Dallas, Texas, Hot-Springs, Arkansas, and Mayo Clinic at Rochester, Minn-

esota, for treatment in addition to that rendered by the three doctors in Memphis.

His back injury, though not incapacitating continuously, is probably permanent and will continue to cause pain. He has to sleep on a hospital type bed with head and feet elevated, and, therefore cannot use a Pullman berth in traveling as required by his business, nor go any place where such a bed is not available.

He may have to undergo surgical treatment but its success is uncertain.

His medical and travel expense was over $3,000. The value of his lost time totaling eight months is shown by evidence of his earning capacity to have been high, much above the average person, although not necessarily $8,000 as figured by plaintiff's attorney.

The defendant's physician examined him but did not testify.

The above summary shows clearly a basis for substantial damages.

Defendant's second reason for these assignments urging remote contributory negligence involves a difference of opinion between counsel as to whether the appellate courts may consider same as a basis for reduction of the verdict, where the jury has been properly charged on the respective effects to be given both proximate and remote contributory negligenc and presumably have acted accordingly in assessing damages. Stated otherwise, may the reviewing court examine the evidence tending to show remote contributory negligence of the plaintiff in addition to the evidence of the extent of the damages, if any?

This question is answered negatively in Redding v. Hatcher, 1932, 14 Tenn. App. 561, 568.

In Nashville, C. & St. L. Ry. v. White 1927, 158 Tenn. 407, 15 S. W. (2d) 1, 6, the Supreme Court found it "ap-

parent from the record,'' that plaintiff's intestate was guilty of great but remote contributory negligence and suggested a remittitur.

Thus it answered the above question positively, but only to the extent that it appears "apparent" from the record.

In the instant case we are not able to hold that remote contributory negligence is apparent from the record.

This is so for the reason that there was sharp conflict in the respective theories and the evidence as to how the accident occurred.

Plaintiff admitted that he saw the bus as he entered the intersection but placed it far enough away to give him ample time to execute his turn in a proper manner.

Whereas, in the White case, supra, the plaintiff's own testimony left no doubt as to the movements, position and lack of ability to see an approaching train at a crossing on the part of his intestate, who was driving the automobile, until too late to avoid probable injury.

We therefore, overruled defendant's Assignments II and III.

We have carefully considered plaintiff's elaborate brief and argument directed at obtaining a restoration of the original verdict, but we think the case has been fairly tried and that there is no appearance of an abuse of discretion on the part of the Court in suggesting the remittitur.

We, therefore, affirm the action of the Court below and tax each party with the costs of his appeal. Judgment will here be entered for $17,100 with interest from July 11, 1947.

Baptist, P. J., and Adams, Sp. J., concur.