MRS. MARY L. WALT *v.* DAVID C. WALT *et al.*

and

E. E. JETTER *et al. v.* JESSE P. WALT *et al.*

(*Jackson.* April Term, 1904.)

1. **HUSBAND AND WIFE.** Resulting trust arises in favor of wife, where they sell her separate estate, and the husband bids in the land for unpaid purchase money, and takes deed to himself.

Where the husband makes postnuptial settlement upon his wife, by which he relinquishes to her all of his interest in certain land of hers, and settles it upon her to her sole and separate use, and afterwards they sell and convey the land and take from the purchaser a deed of trust to secure the purchase money, and at a sale thereunder, the husband bids in the land for the balance of the unpaid purchase money, and takes a conveyance in his own name, the title thereby acquired is held by him, not for himself, but as trustee for his wife, in whose favor a resulting trust at once arises. (*Post, pp.* 192-196.)

Cases cited and approved: Sampley v. Watson, 43 Ala., 377; Garner v. Graves, 54 Ind., 188; Burks v. Loggins, 39 Miss., 462; Williams v. Green, 68 N. C., 183; Hall v. Wortman, 123 Mich., 304; Trimble v. Reis, 37 Pa., 448; Rousseau v. Flowers, 6 Ky. Law Rep., 298.

2. **SAME.** Same. Land bought back for the purchase money again becomes subject to the deed of settlement under which held, when.

Where the husband, by a postnuptial settlement upon his wife, relinquishes to her all of his interest in her land, and settles it upon her to her sole and separate use, with a provision for its exchange, or sale and reinvestment, and the property so acquired by exchange or sale and reinvestment to be held subject to all the limitations and trusts prescribed in the deed of

Walt v. Walt.

settlement; and afterwards they sell and convey the land and take from the purchaser a deed of trust to secure the purchase money, and at a sale thereunder, the husband bids in the land for the balance of the unpaid purchase money, and takes the conveyance in his own name, a·resulting trust arises in favor of the wife, and the land comes back under the provisions of the deed of settlement. (*Post*, *pp*. 192-197.)

3. **SAME.** Husband treated as trustee for wife in his dealings with her separate estate, when.

In dealing with the wife's separate estate, the husband, in the absence of clear testimony to the contrary, must be treated as her trustee, and his conduct must be measured as that of a trustee. (*Post*, *p*. 195.)

Cases cited and approved: Young v. Jones, 9 Hum., 551, 555; Bottoms v. Corley, 5 Heis., 5, 10; Lishey v. Lishey, 2 Tenn. Chy., 5, 6, and citations; Rich v. Cockrell, 9 Ves., 375; Gore v. Knight, 2 Vern., 535; Hughes v. Wells, 9 Hare, 765; Darkin v. Darkin, 17 Beav., 578.

4. **TRUSTS AND TRUSTEES.** Trust ceases when purpose is completed; and trustee's heirs are not then necessary parties to suit to recover the property.

Where a trust created for a married woman by deed of settlement has served and completed its purpose in the protection of the wife's estate during the life of her husband, it will become inoperative upon the husband's death, and the surviving wife may enforce her rights in the land without making the heirs of the deceased trustee parties to the suit. (*Post*, *p*. 197.)

5. **HUSBAND AND WIFE.** Husband's deed of settlement relinquishing his interest to her land, etc., is effective without her joinder.

The husband's deed relinquishing all of his interest in his wife's land, creating a separate therein, and a trust for her benefit, is effective without the joinder of the wife in the operative words of the deed. (*Post*, *pp*. 197, 198.)

Case cited and approved: Poindexter v. Rawlings, 106 Tenn., 97.

Walt v. Walt.

6. **HOMESTEAD. Actual occupancy of land is not essential.**
It is not essential either to the acquisition or retention of a home-
stead that there should be actual occupancy of the land.   (*Post,
pp*, 198, 199.)

Acts cited and construed:  1879, ch. 171.

Cases cited and approved:   Rhea v. Rhea, 15 Lea, 528;  Howell
v. Jones, 91 Tenn., 402;  Cowan v. Carson, 101 Tenn., 523;  Bris-
coe v. Vaughn, 103 Tenn., 307;  Moses v. Groner, 106 Tenn., 121.

7. **SAME. Statutes are to be liberally construed in its favor.**
Homestead statutes are to be liberally construed in favor of the
homestead right.   (*Post, p.* 199.)

Cases cited and approved:   White v. Fulghum, 87 Tenn., 281;
Loftis v. Loftis, 94 Tenn., 232.

8. **SAME. Presumption against waiver or abandonment.**
There is a strong presumption against any waiver or abandon-
ment of the homestead right.   (*Post, p.* 199.)

Case cited and approved: Galyon v. Gilmore, 93 Tenn., 671.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—
F. H. HEISKELL, Chancellor.

L. H. ESTES and RANDOLPH & RANDOLPH, for com-
plainants.

RANDOLPH & RANDOLPH, R. W. SANFORD, and L. H.
ESTES, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The first question to be determined is whether Mary L. Walt is entitled to the 248 acres of land described in the pleadings, as against the heirs of her deceased husband.

We are of the opinion that she is so entitled.

This land was inherited by her from her father, Green B. Bateman. On the 7th day of January, 1861, her husband, James R. Walt, relinquished to her all of his interest in it, and settled it upon her to her sole and separate use.

On January 3, 1872, the husband and wife joined in a deed to W. P. York and W. S. Noblin; and they on the same day executed a trust deed to secure the purchase money, evidenced by two promissory notes, each of $750.

The trustee, Irby, died, and one W. P. Wilson was substituted for him, and on the 22d day of May, 1876, sold the land to pay the purchase money. At this sale, James R. Walt became the purchaser, and the land was conveyed to him by the trustee. The deed of the trustee recites that he paid the amount bid by him at the sale, $750, and that, after deducting the expenses of the sale, the balance was paid on the second and last note secured in the trust deed; that is, on the purchase money which York and Noblin had contracted to pay when they bought the land.

It is to be inferred from the foregoing that the land was taken back, or rather bid in, for the balance of the

unpaid purchase money. In addition to this inference, it is satisfactorily proven by the testimony of witnesses as to statements made by James R. Walt himself that such was the case.

It does not appear from the record, in direct terms, how or to whom the two notes of $750 each were made payable. The deed to York and Noblin is not in the record, nor are the notes produced, and no one testifies as to their contents. We are left to infer how these matters were from the language of the trust deed made to Irby, from the relation of the parties, and from certain presumptions of law that govern in the class of cases to which the one we have before us belongs.

The postnuptial settlement of 1861, as previously stated, settled the tract of land now in controversy, along with other property, through the intervention of a trustee (one David M. Currin), upon Mrs. Walt, to her sole and separate use. This instrument contained the following language, viz.:

"And whereas it is the purpose of the said James R. Walt, husband as aforesaid of the said Mary L. Walt, to secure to her the said Mary L. to her sole and separate use and free from all claims or interest upon his part, the whole property, real, personal or mixed, hereinbefore described. Now, therefore, these presents witnesseth, that the said James R. doth hereby quit-claim and relinquish all interest and estate that by marital right or otherwise he may have acquired in and

to the property, real, personal and mixed, hereinbefore described; the said property is to be held by the said David M. Currin, party of the third part, as trustee, for the benefit of the said Mary L. Walt. But the said David M., party of the third part, is in no event to be held responsible, on account of the manner in which he may have discharged his said trusteeship, which is hereby accepted. The nominal consideration of five dollars is here stated, and it is further stipulated that the said David M., trustee as aforesaid, may at any time upon the request of the said Mary L. (which is to be indicated by her in writing with him in any paper which he may execute), sell, exchange, or otherwise dispose of any of the property hereby conveyed. But any property that the said David M. may derive or acquire by means of any such sale, exchange or other disposition, is to be held by him merely as trustee for the said Mary L., subject to all of the limitations and trusts that have been hereinbefore prescribed.

"It is further stipulated that the said Mary L. is to have the power of disposing of her said estate, by will, or by a writing in the nature of a last will and testament, which is to be executed with the formalities prescribed by the laws of Tennessee, or those of Texas (as the property may happen to be situated in the one State or the other), in case of last will and testament. In the event of her failing to make such disposition of her said property, and dying leaving her said husband James R. surviving her, then the whole of the separate estate is to

Walt v. Walt.

belong absolutely and exclusively to the said James R."

The trustee, Currin, died long before the sale to York and Noblin was made, and no one was ever appointed to supply his place.

The trust deed above referred to, which York and Noblin executed to Irby to secure the aforesaid purchase money, recites, in its first paragraph, that the transaction, in respect of the land referred to, was had with Mrs. Walt. The succeeding paragraphs indicate that probably the notes were made payable on their face to Mrs. Mary L. Walt and James R. Walt, the husband and wife.

We are not to infer, however, that they were payable simply to the husband and wife, without further stipulations. In dealing with the wife's separate estate, the husband, in the absence of clear testimony to the contrary, must be treated as her trustee, and his conduct measured by that standard. *Lishey* v. *Lishey,* 2 Tenn., Ch., 5, 6, and cases cited; *Rich* v. *Cockrell,* 9 Ves., 375; *Gore* v. *Knight,* 2 Vern., 535; *Hughes* v. *Wells,* 9 Hare, 765; *Darkin* v. *Darkin,* 17 Beav., 578. See, also, *Bottoms* v. *Corley,* 5 Heisk., 5, 10; *Young* v. *Jones,* 9 Humph., 551, 555. This rule is grounded in sound reason, based on the position of influence and authority which the marital relation gives to the husband.

From this trustee relation, we must infer that the husband acted in accordance with his duty. Doing so, he could not have properly retained for himself any greater interest in the face of the notes than his right of

survivorship, to which he was entitled under the latter part of the quotation above made from the deed of settlement.

But even if we should be justified in finding that he violated his duty, and did not limit his interest in the property in the manner provided in the deed of settlement, but took notes payable directly to himself and his wife without more, the result would be the same. The notes so taken would be the property of the wife, to be held by her under the terms of the aforesaid deed creating her separate estate. 25 Am. & Eng. Ency. Law (2d Ed.), p. 367, citing *Sampley* v. *Watson,* 43 Ala., 377; *Garner* v. *Graves,* 54 Ind., 188; *Burks* v. *Loggins,* 39 Miss., 462; *Williams* v. *Green,* 68 N. C., 183; *Hall* v. *Wortman,* 123 Mich., 304, 82 N. W., 50. See, also, subtitle "c," and note 10, citing *Trimble* v. *Reis,* 37 Pa., 448; *Rousseau* v. *Flower's Adm'r,* 6 Ky. Law Rep., 298.

So in either event the notes were the property of the wife, and when the husband bought the land back at the trustee's sale for the orginal purchase money, and took the title in his own name, the consideration was furnished by her, and a resulting trust at once arose in her favor.

Of course, when the land so came back to her, it was still incumbered with the interest secured to the husband, in case it should remain unsold and he should survive her. That, however, is not now a practical question because it is shown that the husband died, leaving the wife surviving.

In what we have said, we have assumed, without deciding the question, that Mrs. Walt had power to sell the property after the death of Currin, no other trustee having been appointed. If she did not have that power, the property would remain under the deed of settlement undisturbed by the transaction with York and Noblin. If she did have the power, and properly exercised it in selling to York and Noblin, then, as already pointed out, when it was bought back for the purchase money, it returned to the deed of settlement.

So, in either view of the case, the result is the same, and the rights of Mrs. Walt are superior to those of the heirs of her husband, James R. Walt.

It is proper to add that the trust, created for Mrs. Walt by the deed of settlement, having served and completed its purpose, in the protection of the wife's estate during the life of her husband, is, under the rule applicable to that subject, no longer operative. Mrs. Walt could therefore properly sue and assert her right to the land without bringing the heirs of David M. Currin, the deceased trustee, before the court.

It was insisted in the brief of defendant's counsel that the deed of settlement never became operative, and, indeed, was never a legal instrument, because the wife did not join the husband in its operative words.

The suggestion arises out of a misconception of the rule referred to. The wife conveyed nothing. She was, in effect, the conveyee. The husband had the right by his single deed to release to her all of his interest in her

estate, and to provide that she should hold it as separate estate. If they had adopted the circuitous method of uniting in a deed to a third party, and that party had then made the deed back to the wife, to her sole and separate use, Mrs. Walt would have received at last nothing more than she had at the beginning, except the relinquishment of her husband's marital rights in the property. Why, then, could he not release such rights to her directly, or to a trustee for her benefit, in the form of an instrument declaring that she should hold the property free of his marital rights; that is, to to her sole and separate use? We think he clearly had the right to do so. Whether he had the right to impose restrictions upon her power of sale, under such circumstances, we need not consider. It is probable, however, that such restrictions might be treated as conditions annexed to the grant, and so valid.

Even if there had been no words undertaking to create the separate estate, it would have arisen, under the circumstances, by implication of law, within the principle of *Poindexter* v. *Rawlings,* 106 Tenn., 97, 59 S. W., 766, 82 Am. St. Rep., 869.

The only question remaining to be considered is whether Mrs. Walt is entitled to homestead in the other lands involved, which the court below found to belong to her husband's estate.

We think there can be no real doubt that she is so entitled. Since the act of 1879, p. 213, c. 171, it has not been essential, either to the acquisition or retention of

a homestead, that there should be actual occupancy of the land. *Howell* v. *Jones,* 91 Tenn., 402, 19 S. W., 757; *Rhea* v. *Rhea,* 15 Lea, 528; *Moses* v. *Groner,* 106 Tenn., 121, 60. S. W., 497; *Briscoe* v. *Vaughn,* 103 Tenn, 307, 52 S. W., 1068; *Cowan, McClung & Co.* v. *Carson,* 101 Tenn., 523, 50 S. W., 742. Homestead statutes are to be liberally construed in favor of the homestead right. *Loftis* v. *Loftis,* 94 Tenn., 232, 28 S. W., 1091; *White* v. *Fulghum,* 87 Tenn., 281, 10 S. W., 501. There is a strong presumption against any waiver or abandonment of the right. *Galyon* v. *Gilmore,* 93 Tenn., 671, 28 S. W., 301.

It results, there is no error in the decree of the chancellor, and it must be affirmed, with the costs of the appeal, and the cause remanded for further proceedings.