PATTON v. HARDISON.—101 S. W. (2d) 698.

Middle Section.　June 27, 1936.

Petition for Certiorari denied by Supreme Court, February 13, 1937.

J. L. Reynolds and Richard S. West, both of Nashville, for appellant Hardison.

James C. Havron, of Nashville, for appellee executrix.

FAW, P. J. ■ This suit may, we think, be aptly characterized as an action of detinue in the chancery court, which action that court may entertain by virtue of its enlarged statutory jurisdiction. Code, sections 8566 and 10377; Gibson's Suits in Chancery (2 Ed.), section 28, subsecs. 16 and 17.

■ It also partakes of the nature of a suit to compel the trustee of an express trust to account for and deliver to those entitled certain trust property that is or should be in his possession; and, in the latter aspect, it falls within the inherent jurisdiction of a court of equity. Gibson's suits in Chancery (2 Ed.), section 25.

The complainant is Fannie Louise Patton, a resident citizen of Davidson county, Tennesseee, who sues in the capacity of executrix of the will of her father, W. M. Winters, who died on December 26, 1934, and whose will was duly probated in Davidson county, Tennessee, on January 10, 1935.

The defendant named in the bill is W. F. Hardison, a resident citizen of Davidson county, Tennessee; and complainant alleges that the defendant has in his possession, as trustee under an express trust created by the sixth item of the will of George W. Winters, deceased (the father of complainant's testator), certain described promissory notes, aggregating $6,135 (principal), to which notes she has title, and of which she is entitled to immediate possession, as executrix of the will of W. M. Winters, deceased, by virtue of the provisions of the aforesaid wills of George W. Winters and W. M. Winters.

Complainant prayed that she "be decreed the title to these securities, in her capacity as executrix of the W. M. Winter's estate, and her right to the immediate and exclusive possession thereof be decreed and duly enforced by all necessary orders," and that she "be given a decree for the accrued interest on the securities while being unlawfully detained by the defendant, including any interest, principal sum or other sums collected by the defendant by reason of his unlawful possession of these securities."

Defendant answered the bill and admitted that he has in his possession the notes for which complainant is suing; that said notes came into his possession as trustee in the manner stated in the bill; that he had turned over to complainant as executrix of the will of W. M. Winters, before her bill in this case was filed, notes aggregating $39,880.82 (principal), which constituted all of the aforesaid trust estate in his hands except said notes aggregating $6,135 (principal) for which complainant is suing; that he (defendant) was retaining, and was rightfully entitled to retain, by virtue of a contract made with

defendant by complainant's testator in his lifetime, the last-mentioned batch of notes as security for certain advancements made by defendant to complainant's testator (over and above the income of the trust estate) amounting to $6,003.96 as of February 24, 1934.

The foregoing is a brief summary of the issues in this case; but these issues may not be well understood and determined without a knowledge of certain admitted facts disclosed by the pleadings, and also certain additional allegations in defendant's answer (filed as a cross-bill) which are not admitted by the complainant.

We will first state certain admitted facts disclosed by the pleadings. George W. Winters, then a resident citizen of Davidson county, Tennessee, died in the year of 1915, leaving a will which was thereafter probated as his last will and testament in Davidson county, Tennessee, and which, among other provisions, purported to create a trust for the benefit of the testator's widow and three surviving children. Shortly after the probate of said will of George W. Winters, his widow and children filed a bill in the chancery court of Davidson county for the purpose of obtaining a construction of said will, and particularly of item 6 thereof, which contained the provisions purporting to create a trust as aforesaid.

The chief contention of the complainants in that suit was that item 6 of said will of George W. Winters, although attempting to create a trust, in effect created a perpetuity and was, therefore, void. The chancery court sustained the contention of the complainants in that case, and decreed that item 6 of said will of George W. Winters was void. On appeal, the Court of Civil Appeals affirmed the decree of the chancellor; but the Supreme Court granted the writ of certiorari, reversed the decree of the chancery court and the Court of Civil Appeals, and decreed that said will created "a valid, binding, active trust" which was not "amenable to any of the objections urged against it." The opinion of the Supreme Court in that case (prepared by Mr. Justice Fentress) sub nom. Winters v. March, is reported in 139 Tenn., 496 et seq., 202 S. W., 73, and, as a convenient method of stating, not only the settled construction of the will of George W. Winters, but also the contents thereof and certain other pertinent facts, we quote from said opinion as follows:

"This cause involves a contest over the validity of a trust created by the sixth item of the will of G. W. Winters, deceased. The bill was filed by the widow and children of the testator against his grandchildren, who are all minors, and W. F. Hardison, one of the trustees named in the will.

"The chancellor adjudged the trust void, and the Court of Civil Appeals sustained his decree. This court granted the writ of certiorari to that court, and the cause has been argued here.

"The case is presented upon an agreed statement of facts, in which it appears that the deceased was survived by his widow, two sons,

and one daughter. It is shown that by successful trading and frugality he had accumulated real and personal property of the value of approximately $250,000, and had effected upon his life policies of insurance, payable to his estate, for more than $50,000. The testator also left life insurance payable to his widow for $10,000, and to each child for $5,000, which amounts have been paid to them.

"At the time of his death the testator was a member of the partnership of Winters & Hardison, dealers in securities and real estate in Nashville; the junior member of the firm being W. F. Hardison. The written articles of partnership provided that the firm should not be dissolved by the death of either party, but that the representatives of the partner dying should designate some one to take the place of the deceased partner, and that the partnership should continue under the firm name until the expiration of the period of five years provided in the articles of partnership. After the death of the testator, his son Jesse T. Winters, who had theretofore been employed by the firm, by the consent of all of the parties interested, was designated to the place of the testator, and the partnership has since continued under the firm name.

"By item 1 of the will the testator provided for the payment of his debts and funeral expenses, which are shown to have been small. By item 2 he devised his residence to his wife for life, and at her death to his son Jesse T. Winters, for life, and at his death to his children. By items 3 and 4 he devised to his other son and daughter each a house and lot for life, and provided that at their death their children should have the lots, respectively.

"By the fifth item of his will the testator repeats that the above-mentioned properties, devised to his children, are for their lives. and at their death are to go to their children, and in the event any child shall die without issue the property so devised to such child shall go to the survivors, and at their death to their children.

"The sixth item is as follows: 'All the rest and residue of my estate of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, real, personal or mixed, I leave in trust to the firm of Winters & Hardison as trustee for my said wife and three children, share and share alike, the income derived therefrom by said trustees to be paid over to my said wife and children as their necessities may demand, and in the event that their condition is such that it is unnecessary to encroach upon the income therefrom, then I direct that said trustees invest the income so as to bring in an income.'

"The pertinent portions of the remainder of the will are as follows:

" '7th. I give and grant unto my executor, Jesse T. Winters full power and authority to sell any and all of the real estate conveyed to me for the firm of Winters & Hardison, . . . and I also authorize and empower and direct my executor to sell any real estate

belonging to me individually as my residuary estate but direct that W. F. Hardison act as general manager and adviser of my said executor in disposing of said real estate held by me for said firm of Winters & Hardison, and also the property owned by me individually.'

" '8th. It is my will and I direct that the firm of Winters & Hardison continue as under the contract of copartnership existing between W. F. Hardison and myself, and that the said W. F. Hardison be general manager of said business.'

" 'Last: I nominate and appoint my son, Jesse T. Winters executor of this my last will and testament, and nominate and appoint W. F. Hardison general manager of the firm of Winters & Hardison, and also general manager of the trust fund left to the firm of Winters & Hardison, trustees, under item 6 of this my will, and also appoint him as advisory trustee and general manager of my residuary estate.'

"It is contended that the sixth provision of the will creates a perpetuity. The following criticism appears in the brief of counsel for complainants:

" ''There is no provision in this item under which the grandchildren would come into the estate on the death of the children. There is no time fixed for the termination of the trust, but it is made the duty of the trustees to hold, for all time, the corpus of the estate, and if the widow and children do not need the income, then this income is to be invested, becoming a part of the corpus. There is no provision that it shall cease on the death of the trustee, and if the trust is valid it will be the duty of a court of equity to appoint a trustee in the place of the dead one so that he could continue the trust. We would thus have certainly the corpus of this estate, if not the income, tied up indefinitely.'

"The duration of a trust depends upon the purposes of the trust. When the purposes have been accomplished the trust ceases.

"In the leading case of Ellis v. Fisher, 35 Tenn. (3 Sneed), 231, 65 Am. Dec., 52, this court in an opinion by Judge McKinney, in treating of the duration of trusts, said:

" 'The established doctrine is, that trustees take exactly that quantity of interest which the purposes of the trust require. The question is not, whether the testator has used words of limitation, or expressions adequate to carry an estate of inheritance; but whether the exigencies of the trust demand the fee simple or can be satisfied by any, and what less estate. And, therefore, a devise to trustees may be either restricted or extended, as the nature and purpose of the trust require.' Walt v. Walt, 113 Tenn., 189, 81 S. W., 228; Dunham v. Harvey, 111 Tenn., 620, 69 S. W. 772; Temple v. Ferguson, 110 Tenn., 84, 72 S. W., 455, 100 Am. St. Rep., 791; Henson v. Wright, 88 Tenn., 501, 12 S. W., 1035; Jourolmon v. Massengill, 86 Tenn., 81, 5 S. W., 719; Davis v. Williams, 85 Tenn., 646, 4 S. W.,

8; Hooberry v. Harding, 78 Tenn. (10 Lea), [392], 397; Henderson v. Hill, 77 Tenn. (9 Lea), 25.

"We think this item of the will, considered in connection with the preceding and following provisions, shows the testator purposed three things: First, the conservation of his estate; second, provision for the necessities of his family; and, third, the preservation and investment of the income of the estate beyond the amount necessary to meet the necessities of his wife and children.

"Evidently he had the idea that these purposes could better be accomplished by leaving his estate to trustees than by giving it directly to his widow and children. Hardison was his partner and doubtless familiar with his partnership and individual realty, so the testator directs that he shall manage the disposition of it. His confidence in the ability of his partner is further proven by making him a trustee and 'general manager' of his residuary estate. It is true, the testator devised his property to the partnership of Winters & Hardison; however, it is manifest that although the firm was to hold the property in trust, as stated, the management of it was imposed upon Hardison.

"The trust will cease as to each cestui que trust at death. Each devisee is entitled to receive the portion of the income from his share as his necessities may demand and, of course, the necessities of each end at death. The will does not provide for any devise over of the residuum of the estate after the death of the beneficiaries, hence the share of each beneficiary will go at death to his or her devisee, distributee, or heir, as the case may be. Temple v. Ferguson, 110 Tenn., 84, 72 S. W., 455, 100 Am. St. Rep., 791; Ellis v. Fisher, supra; Smith v. Metcalf, 38 Tenn. (1 Head), 64; Rogers v. White, 33 Tenn. (1 Sneed), 68."

In the decree of the Supreme Court entered in said cause of Winters v. March is incorporated the several rulings of the court substantially as set forth in its opinion above quoted, and the decree concludes with two paragraphs which (omitting the adjudication of costs) are as follows:

"The Court is further of opinion and doth so order, adjudge and decree, that the trust created by said will ceases and terminates on the death of any one of said legatees in so far as relates to the share of such deceased legatee, and that on the death of the last one of said legatees, the entire trust will cease and terminate, its objects and purposes having thus been accomplished.

"The Court is further of opinion and doth so order, adjudge and decree that the above named widow and children of the testator will have the right under said will to dispose of his or her share of the estate left to such party by Item six of said will by will, but that in the event that any one of said legatees should die without having disposed of said interest by will the same will pass under the laws of in-

heritance to the next of kin of each party so dying without having disposed of his share by will.''

Complainant's testator, W. M. Winters, survived all the other beneficiaries of said trust created by the will of George W. Winters, and, after the death of his brother Jesse T. Winters (named as trustee and executor by the will of George W. Winters), he (W. M. Winters), together with W. F. Hardison, defendant herein, and others, filed a bill in the chancery court of Davidson county, Part 2, praying, among other things, that a new trustee be appointed to take the place of Jesse Winters deceased.

In the last-mentioned cause, which was styled W. F. Hardison, Trustee, et al. v. Neal Winters, et al. (and being rule No. 39799 on the docket of said chancery court), an ''agreed stipulation'' was filed on May 31, 1929, by which said W. F. Hardison was authorized to continue to act as sole trustee of the trust estate created by item 6 of the will of George W. Winters, until the final distribution of said estate, and further that ''W. M. Winters was authorized to designate certain notes which the defendant Hardison held as trustee from and after which the said notes so designated by the said W. M. Winters were to be held by the defendant Hardison as trustee for the benefit of W. M. Winters pursuant to the trust created under the sixth Item of said George W. Winters will.'' Pursuant to said stipulation, complainant's testator, W. M. Winters, thereafter ''designated'' certain notes which were to be held by defendant Hardison as trustee as aforesaid; and at the time of the death of said W. M. Winters, the notes thus held by defendant Hardison aggregated 46,015.82 (principal).

The will of complainant's testator, W. M. Winters, directed the payment of his funeral expenses, but otherwise made no provision for the payment of his debts. After making specific devises of real estate to his wife and named children and grandchildren, respectively, and a bequest of his household property to his wife, the remaining items of his will (Items 9 and 10) are as follows:

''Item 9 All of my other personal Property including notes etc. I divide equally between my wife and children share and share alike and the Fulcher children who may be living at my death are to have the share their mother would have had if she had lived. And in the event any of my other children should die before I do, leaving children, such children are to have the share their Parent would have had.

''Item 10 I nominate my Daughter Fannie Louise Patton executrix of this will and request that she be allowed to qualify without Bond and I request that my estate be wound up and distributed as soon as possible after my Death.''

Complainant Fannie Louise Patton qualified as executrix of the aforesaid will of W. M. Winters, and thereafter made demand upon

defendant Hardison that he deliver to her the said notes held by him as trustee for her testator as aforestated, and, in response to such demand, defendant Hardison turned over to complainant, through her attorney, a number of such "designated" notes aggregating $39,-880,82 (principal), but, as hereinbefore stated, defendant Hardison retained, and declined to deliver to complainant, the remainder of said "designated" notes, which notes so retained by him aggregated $6,135 (principal).

The complainant's suit is bottomed on the proposition that the notes thus retained by defendant are a part of the corpus of the trust estate devised by item 6 of the will of George W. Winters as aforesaid; that "by the terms of the said George W. Winter's will her testator, the said W. M. Winters, had the right of receiving the income from these securities and also the right and privilege of devising the same by will, if he so desired, but that he did not have the right to encroach upon the corpus of the estate or in any manner to dispose of or encumber the same during his lifetime"; that "upon the death of her testator, W. M. Winters, the trust estate created by Item six of the said George W. Winter's will automatically terminated and the defendant Hardison ceased to have any right to the possession of or control of this said trust estate or the securities or other property constituting same"; and that, by the terms of the will of her testator, W. M. Winters, "complainant was charged with the duty of taking and distributing the securities which were held by the defendant Hardison as trustee."

The defenses interposed by defendant Hardison will sufficiently appear from excerpts from his answer to the bill as follows:

"Your defendant would show to the Court that the deceased, W. M. Winters, was the surviving child of the said G. W. Winters, deceased. That he had quite a large and expensive family and house to maintain and that owing to the great financial stress of the last six or seven years, the collected earnings of his portion of the estate income were insufficient for his maintenance and support, so he claimed, and which appeared to your defendant to be true. That your defendant, from time to time during said period, made certain advancements to him over and above his income collected, with the express understanding and agreement that it was to be charged against his estate and if not paid out of his income as collected. prior to his death, that provision would be made by him in his will for the settlement of same. Said advancements were made with this understanding and amounted, at the time of the death of the said W. M. Winters, to the sum of $6003.96 with interest from February 24, 1934, and of the larger items of said advancements was for back taxes on his property, real and personal, which amounted to over $2500.00, also a large portion of the balance was paid out for repairs and fire insurance on his property.

"Your defendant would further show to the Court that the said W. M. Winters did execute his will as agreed upon and did make express provision in same for payment of all debts and that said will was kept by your defendant in the safe of Winters & Hardison until the Saturday before his death on Wednesday, December 26, 1934. On that date Mr. Winters phoned your defendant requesting that he bring his will out home on Sunday, stating that since he had lost the farm he intended giving his son, Joe, that he wanted to add a codicil to same giving him something else in place of it. Your defendant complied with the request and delivered the will and that is the last time defendant has seen it.

"Whether or not said express provision to provide for the payment of his debts was left out of his new will executed December 22, 1934 (and under which his estate is being administered) by oversight or design, your defendant is not advised. In either case, your defendant avers that the said W. M. Winters had no legal or moral right to change or eliminate this portion from his last will and violate the trust reposed in him by your defendant.

"While it is true that your defendant is vested with a broad discretion in his capacity as General Manager and Trustee under the will of G. W. Winters, deceased, as to what constituted necessities of his children appeared to him as necessities at the various times they were advanced, he avers that the added protection agreed upon and executed by W. M. Winters in his former will is a valid and binding trust and should be enforced by this Honorable Court. . . . It appearing that complainant claims she has no legal right to recognize the provision of the deceased in his former will as to payment of his indebtedness, your defendant is advised that he is rightfully entitled to retain sufficient of the assets to satisfy the indebtedness of the deceased for advancements made to him as hereinabove set out and explained, and especially so in view of the oversight or design on the part of the deceased in failing to make express provision for the payment of his indebtedness in his last will as he was legally and morally bound to do. . . .

"Your defendant would further show to the Court that he is proceeding as rapidly as possible to wind up the estate of G. W. Winters, deceased, and the business of the firm of Winters & Hardison of which the deceased, W. M. Winters, was a member and after the winding up of same, whatever sum is due complainant, will be regularly accounted for. Until this is done, your defendant does not know and cannot, at present time, determine what amount will be coming to complainant as Executrix Estate W. M. Winters, deceased."

Before the hearing below, defendant Hardison, by leave of the court, amended his answer and cross-bill by inserting therein the additional allegation that, "the estate of W. M. Winters, deceased, is insolvent unless that portion coming to him under the will of George

W. Winters is considered a part of his estate and subject to his debts.''

Defendant Hardison filed his answer as a cross-bill, and prayed that complainant be required to file as an exhibit to her answer the will of the said W. M. Winters delivered to him by defendant on Saturday before his death on Wednesday, December 26, 1934, and that that portion of said will in so far as the provision for payment of the indebtedness of the deceased is concerned be decreed to be a valid and binding trust agreement, and that complainant be required to recognize same in the winding up and settlement of the estate of the deceased, W. M. Winters.

The complainant demurred to the cross-bill, but the chancellor over-ruled the demurrer, ''with the right in the demurrant to set up and rely on all the defenses contained in her demurrer in her answer''; and in her answer as cross-defendant thereafter filed, complainant asserted that ''neither the answer nor cross-bill of defendant Hardison showed any grounds on its face why the defendant Hardison should be allowed to retain the securities which are the subject-matter of this litigation.''

Further, in her answer, cross-defendant denied that the collected earnings of her testator's portion of the income which he received from the George W. Winter's estate were insufficient for his maintenance and support, as alleged in the defendant's answer and cross-bill.

The remainder of the cross-defendant's answer to the cross-bill is as follows:

''She neither admits nor denies that the defendant Hardison made certain advances to her testator over and above his estate income collected, with the understanding that there was to be a provision made in her testator's will for the payment of the same, but demands strict proof of the same. Concerning these transactions your complainant and cross-defendant is advised and avers that her testator, W. M. Winters, did draw a certain amount from the firm of Winters & Hardison, the exact amount of which she does not know, but that this was not drawn from the G. W. Winter's estate.

''Your complainant and cross-defendant neither admits nor denies that there was a will made by her testator containing the provision that his debts be paid, and demands strict proof of the same. Touching this subject, it would be respectfully shown to your Honor that diligent search has been made and no other will or record of the same has been found. Your complainant and cross-defendant would further show to the Court that even if this provision were in her testator's will it would certainly not give the defendant and cross-complainant, W. F. Hardison, the right to arbitrarily select the securities from her testator's trust estate to satisfy his claim against

the same, nor would it create a resulting trust as alleged in the said W. F. Hardison's cross-bill and answer.

"Your complainant and cross-defendant further denies that the estate of W. M. Winters, deceased, is insolvent unless that portion coming to him under the will of G. W. Winters is considered a part of his estate and subject to his debts, as alleged in the amendment to the answer and cross-bill of defendant Hardison.

"All other allegations contained in the answer and cross-bill of the defendant Hardison not already specifically denied are herein now generally denied and denied as fully as though separately and specifically denied."

The depositions of defendant W. F. Hardison and three other witnesses were taken and filed on behalf of the defendant, and the cause was thereafter heard by the chancellor upon the aforesaid pleadings and proof (including a number of documentary exhibits), and a decree was made and entered on July 16, 1935, granting to complainant the relief prayed for in her bill. The learned chancellor filed no separate findings, but his findings are embodied in his final decree, which decree is as follows:

"This cause came on to be finally heard before Chancellor James B. Newman, July 16, 1935, upon the entire record and argument of solicitors, from all of which the Court finds that W. F. Hardison, under the will of G. W. Winters, deceased, was a fiduciary in his dealings with W. M. Winters, the beneficiary in the matters involved, and the only competent evidence in the record of the contents of any other will of W. M. Winters except the will which has been probated, is the testimony of the attorney for W. F. Hardison; there is no testimony in the record that Winters ever agreed to make a will in consideration of Hardison advancing the sum of money involved, nor is there any testimony that he ever made a will in which he specifically made any disposition of his trust estate to Hardison or any other person, the only evidence of a former will being that of the attorney for W. E. Hardison, who states he saw a will, which in general terms and as is usual in wills, provided for the payment of the debts of Winters; that the cross-complainant and defendant, W. F. Hardison has no lien, express or implied, or any right or claim arising by means of his advancement of money to W. M. Winters, on the securities now in the hands of Hardison, hereinafter described; and that said securities pass under the will of W. M. Winters, and that the executrix of his will, Fannie Louise Patton, is entitled to their possession. The question as to whether the note executed by W. M. Winters to Winters & Hardison, is a claim against the estate of W. M. Winters, is not determined, that question not being involved in this litigation. The securities now in the hands of W. F. Hardison, Trustee and individually passing under the will of W. M. Winters to the complainant are as follows:

| | |
|---|---:|
| R. S. West | $1,360.00 Note |
| Z. Taylor | 400.00 |
| M. Larkin | 330.00 |
| E. Phillips | 80.00 |
| W. M. Frierson | 800.00 |
| A. C. Carney | 625.00 |
| W. Williams | 2,000.00 |
| L. A. Armstrong | 300.00 |
| R. S. West | 240.00 |
| Alfred Finklestein | 300.00 note |

due Sept. 25, 1934.
On the Larkin note there was collected before the death of W. M. Winters, $121.52, and this note is entitled to that credit. All interest collected on these securities since the death of Winters will be paid by said W. F. Hardison to said executrix.

"It is therefore ordered, adjudged and decreed by the Court that Fannie Louise Patton, executrix of the estate of W. M. Winters, deceased, is entitled to the possession of the foregoing securities and that W. F. Hardison be and is ordered and directed to deliver same to her, taking her receipt therefor, and he will also account to her for all moneys received as interest on these securities since the death of W. M. Winters.

"The costs of this cause will be paid by W. F. Hardison.

"To the foregoing decree of the Court, the defendant and cross-complainant excepts and prays an appeal to the present term of the Court of Appeals sitting at Nashville, which is by the Court granted upon his executing bond as required by law, and he is allowed thirty days from the entry of this decree in which to perfect said appeal."

The appellant perfected his appeal and has assigned errors here, some of which assignments challenge the chancellor's decree and his several findings with respect to controverted matters. There are other assignments of error (numbered 6 to 14, inclusive) which purport to challenge rulings of the chancellor sustaining objections to specified questions asked defendant Hardison in his deposition.

For obvious reasons the assignments relating to the rulings of the chancellor on objections to "questions" should be first considered; and, for reasons which will presently appear, these assignments of error will be here copied in full. They are as follows:

"6. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: 'Was or not the question of making you secure in the advance you made to him (Winters) from time to time from his father's estate mentioned by him?' (Tr., p. 43.)

"7. The Chancellor erred in sustaining objection to questions asked appellant Hardison to-wit: 'Did you keep any of his (Winters) papers for the last few years in your safe, if so, what?' (Tr., p. 43.)

"8. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: 'I hand you typewritten paper on the letter head of Winters & Hardison, dated December 23, 1930, marked Exhibit 10, Dep. W. F. Hardison, why was this paper made out and under what circumstances did W. M. Winters sign it?' (Tr., 46.)

"9. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: 'Have you made a personal inspection of his (Winters) last will filed for probate in the County Court.' (Tr., 44.)

"10. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: 'What were some of the larger items that the note of W. M. Winters represents?' (Tr., 48.)

"11. The Chancellor erred in sustaining objections to question asked appellant Hardison, to-wit: 'Did or not any bills come to the firm about a month before Mr. Winter's death that you felt should not have been charged to the company, or that you thought should not be under your authority to pay as General Manager of the Estate?' (Tr., 48.)

"12. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: ''What incident took place at your desk at the time you consulted me (Mr. West) about the gun?' (Tr., 49.)

"13. The Chancellor erred in sustaining objection to question asked appellant Hardison to-wit: 'Was any one present when you delivered the will to Mr. Winters on that Sunday afternoon prior to his death?' (Tr., 50.)

"14. The Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit: 'In your judgment as Trustee of the estate of G. W. Winters were these advances necessary ' '' (Tr., 45.)

It is seen that appellant asserts in each of the above quoted assignments of error that "the Chancellor erred in sustaining objection to question asked appellant Hardison, to-wit:" and then follows a question, with citation to the page of the transcript where it appears.

The reasonable inference from the assertion in each of these assignments, that the chancellor sustained an objection to the "question" set forth therein, is that when the question was asked, an objection thereto was interposed and sustained, and the question was not answered by the witness. If such were the record, no assignments of error could be successfully predicated upon such rulings of the chancellor, for "the refusal of the trial court to a permit answers to pertinent questions affords no cause for reversal unless the record shows affirmatively that the answers would have been competent and material evidence." Weeks v. McNulty, 101 Tenn., 495, 501. 48 S. W., 809, 811, 43 L. R. A., 185, 70 Am. St. Rep., 693; Insurance Co. v. Scales, 101 Tenn., 628, 633, 49 S. W., 743; Railroad v. Stonecipher,

95 Tenn., 311, 314, 32 S. W., 208; Stacker v. Louisville Railroad Co., 106 Tenn., 450, 452, 61 S. W., 766.

The reason for the rule just stated—at any rate, one reason—is that, in the absence of an answer from the witness, the appellate court cannot· say that, if the witness had been permitted to answer, the answer would have been favorable to the appellant, and a harmless ruling is not reversible error.

It is obvious, we think, from an examination of the several questions incorporated in appellant's said assignments, 6 to 14, inclusive, that answers directly responsive to these questions might have been either competent or incompetent; hence under the authorities above cited, these assignments do not, on their face, show "specifically wherein the action complained of is erroneous and how it prejudiced the rights of the appellant," as required by subdivision 2 of rule 11 of the published rules of this court. See Rules, William's Annotated Code, vol. 7, p. 546. Moreover, we think that said last-mentioned assignments are based upon a misconception of the record. Not only these assignments of error, but the written brief and argument in support thereof, proceed upon the assumption that the chancellor sustained objections to the "questions" incorporated in the assignments. We do not so understand the record.

The witness Hardison made answer to each and all of said questions, and in neither instance was there an objection until the question had been answered by the witness and the objection was, in each instance, manifestly directed to the testimony of the witness, and was sustained by the chancellor for the reason that in his opinion, the testimony embraced in the answer of the witness was incompetent and inadmissible. It would needlessly extend this opinion to set forth the record touching all of these instances, but, as an illustration, we here quote the question copied into the appellant's seventh assignment of error, with the answer of the witness, the objection, the ruling of the chancellor, and the exception of the defendant to such ruling, as these things appear in the record, as follows, viz.:

"Q. Did you keep any of his papers for the last few years in your safe, if so what? A. I kept his will, the one I thought to be his last will. Prior to the year 1928, he at one time got considerably in debt to Winters & Hardison and at that time referred to his will which gave me additional security for any advances made. I had been witness to the will and knew that he had provided for the payment of his just debts. Later he brought to me another will stating that he had decided to have a different executor of his estate and made some other changes as to the disposition of his estate, all the details, I do not remember at this time. He asked me to read the will and see what I thought of it and also asked me to hold it in the safe for him. In that will, as in the former, he had provided for the payment of his just debts and on Sundry occasions referred to that provision when I had

·complained of his being so deeply indebted to the Company. On Saturday, December 22, 1934, he phoned me and asked me that I take his will over to my house, stating he would come by the next morning and get it as he wanted to add a codicil to give his son, Joe, something in lieu· of a farm he had given him in the will and which had since been lost. I took the will over home, and in the afternoon he came by and got it and that was the last time I saw either the will or Mr. Winters until after his death on December 26, 1934.

"Excepted to as conversation with deceased.

"Sustained: Newman, Chancellor.

"Excepted to by defendant."

. It thus appears that appellant's assignments of error numbered 6 to 14, inclusive, purport to challenge, as erroneous, rulings of the chancellor which, so far as the record shows, were not made; and, for this reason, these assignments are overruled.

In this connection, it may be stated that (in addition to the reasons heretofore stated), we could not treat these assignments (6 to 14, inclusive) as directed to the exclusion of the testimony of the witness Hardison, rather than to the questions, for the further reason that it is provided by subdivision 3 of rule 11 of the rules of this court governing assignments of error, heretofore cited, that, "When the error alleged is as to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected."

Through his remaining assignments of error (numbered 1, 2, 3, 4, 5, and 15) appellant Hardison complains of the decree of the chancellor and of the several findings set forth therein, which decree has been copied herein and need not be repeated: Laying aside the evidence excluded by the chancellor, we concur in his findings and decree.

However, we have read the entire record, and perceiving the importance of such excluded evidence in its bearing upon the result in this case, we have (under the reservation in our rules that "the Court, at its option may notice an error overlooked by counsel") considered the chancellor's ruling with respect to such evidence, but we find no error therein.

With two immaterial exceptions, the rulings in question were based upon section 9780 of the Code (Shan. Code, section 5598) which provides that "in actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party."

This is a suit by the executor of W. M. Winters against W. F. Hardison, in which suit a judgment might be rendered for or against

600

either party, according to the weight of the proof. The subject-matter of the rejected testimony of defendant Hardison related to transactions with or statements by complainant's testator, and it was properly excluded. Montague v. Thomason, 91 Tenn., 168, 18 S. W., 264. In view of the absence of assignments of error challenging the exclusion of this testimony, we deem it unnecessary to discuss it further.

It results that the appellant's assignments of error are overruled, and the decree of the chancery court is affirmed.

The costs of the appeal will be adjudged against appellant Hardison and the surety on his appeal bond.

As decreed by the chancellor, the decree in this cause shall not prejudice the rights of either party with respect to "the question as to whether the note executed by W. M. Winters to Winters & Hardison is a claim against the estate of W. M. Winters."

Crownover and DeWitt, JJ., concur.